[Civ. No. 3531. Fifth Dist. Aug. 27, 1979.]

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL UNION NO. 428, Plaintiff and Appellant, v.
WILBUR SILVA, Defendant and Respondent.

752

**COUNSEL**

Wayne Jett for Plaintiff and Appellant.

Goldberg, Fisher & Randall and Arthur F. Fisher for Defendant and Respondent.

## OPINION

ZENOVICH, J.—Plaintiff and appellant Local Union No. 428 of the International Brotherhood of Electrical Workers (hereinafter referred to as Local 428) filed a petition against defendant and respondent Wilbur Silva, doing business as Del Mar Electric (hereinafter referred to as Del Mar) in Kern County Superior Court, seeking enforcement of three awards made by a joint labor-management grievance committee. Each of the three awards requires Del Mar to pay certain fringe benefit contributions as required by a collective bargaining agreement between Local 428 and Del Mar and related litigation costs, including reasonable attorney fees and interest.

Local 428's petition was filed on December 24, 1976. Del Mar's response generally denied the allegations of the petition and raised various defenses to the enforcement of the awards. Del Mar also filed a declaration of its counsel alleging that the meeting of the labor-management committee was not conducted by an "independent arbitrator" and was "at most a mere grievance hearing."

On March 11, 1977, the superior court held a hearing and took testimony regarding the notification procedures used to give Del Mar notice of the labor-management committee meetings and the results of the vote approving the awards by said committee.

After additional briefing by the parties, the trial court issued an order on April 12, 1977, denying enforcement of the awards and ordering that each party pay its respective attorney fees. The order further stated: "MEMO: The [court] has a serious question whether adequate notice was given particularly in those instances where a secretary was served and a known attorney was not served. But more importantly, the uncontroverted declaration of Mr. Fisher concerning and attacking the structure of the 'meeting' raises serious due process questions in the mind of the [court]. The description given does not meet the standards of true arbitration in the opinion of this [court]." A judgment in favor of Del Mar was entered on April 21, 1977. Appellant Local 428 filed a timely notice of appeal.

On October 23, 1973, Del Mar signed a letter of assent authorizing the Kern Chapter of the National Electrical Contractors Association, Inc.

(NECA) as Del Mar's collective bargaining representative and adopting the collective bargaining agreement between NECA and Local 428.[1]

Effective July 1, 1975, NECA and Local 428 negotiated a modification and extension of the collective bargaining agreement for July 1, 1975, through June 30, 1977. A labor-management committee was retained as the basic mechanism for resolving grievance disputes without substantial change from the 1973 agreement, providing:

"(a) There shall be a Labor-Management Committee of three representing the Union and three representing the Employer. It shall meet regularly at such stated times as it may decide. However, it shall also meet within forty-eight (48) hours when notice is given by either party. It shall select its own Chairman and Secretary.

". . . . . . . . . . . . . . . . . .

"(c) All matters coming before the Labor-Management Committee shall be decided by majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

"(d) Should the Labor-Management Committee fail to agree or to adjust any matter, such may be submitted jointly or unilaterally by the parties to this agreement to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding on both parties hereto."

During 1975, a dispute arose between Local 428 and Del Mar concerning Del Mar's failure to pay fringe benefit contributions on behalf of its employees as required by the collective bargaining agreement. Del Mar's failure to pay fringe benefit contributions resulted in the series of three awards by the labor-management committee which appellant sought to have enforced in the trial court.

---

[1]The letter of assent stated it remained in effect until terminated by written notice from Del Mar to NECA and Local 428 "at least one hundred fifty (150) days prior to the then current anniversary date" of the collective bargaining agreement. Although Del Mar did contend at the trial court the letter of assent was no longer binding upon it, it never alleged that it had given the required notice of termination.

■ At the outset, we are called upon to determine whether the issues presented on appeal in this case are to be decided under federal or state substantive law. We are of the opinion that the issues should be decided under federal substantive law.

The considerations in determining whether state or federal substantive law is to be applied to a state court's adjudication of labor law issues were set forth by the California Supreme Court in *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 486 [30 Cal.Rptr. 452, 381 P.2d 188]: "In the enforcement of provisions of collective bargaining agreements obligating the parties to arbitrate disputes, state courts exercise concurrent jurisdiction with federal courts. (*Charles Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed.2d 483].) In so doing state courts must, however, in adjudicating an action which could have been brought in the federal courts under section 301 of the Labor Management Relations Act, apply federal law. (*Local 174 Teamsters, etc. of America* v. *Lucas Flour Co.* (1962) 369 U.S. 95 [82 S.Ct. 571, 7 L.Ed.2d 593].)"

In this case, there is no question as to the applicability of the federal law.

In the trial court, the respondent Del Mar alleged in its "Response to Petition for Confirmation of Award of Arbitrators" that the federal law was applicable. This conclusion is supported by the fact that the National Labor Relations Board had declined to take action not because the dispute did not meet the initial jurisdictional requirements, but rather because Local 428's remedy was through judicial enforcement of the labor-management awards committee. (See 48 Am.Jur.2d (1979) Labor and Labor Relations, § 622, pp. 484-486.)

Therefore, although the state courts have jurisdiction to hear a suit to enforce the collective bargaining contract, federal law must be applied to decide the substantive issues in order that the purposes of the National Labor Relations Act might be fulfilled. (*Walsh* v. *Schlecht* (1977) 429 U.S. 401, 407 [50 L.Ed.2d 641, 648, 97 S.Ct. 679]; see also 48A Am.Jur.2d (1979) Labor and Labor Relations, § 1930, pp. 339-340.)

■ We are next called upon to determine whether the trial court committed reversible error by concluding that the labor-management committee was required to act in a neutral, "true arbitration" manner.

· From a reading of the trial court's memo accompanying the decision to refuse to enforce the awards, we are of the opinion that a key factor in the court's decision appears to have been the declaration by Del Mar's counsel to the effect that the labor-management committee meeting was not "an arbitration proceeding conducted by an independent arbitrator."

Settlement through the methods agreed upon by the parties is the favored means of settling grievance disputes arising out of a collective bargaining agreement. (29 U.S.C. § 173(d).) This policy can be effectuated "only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." (*Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564, 566 [4 L.Ed.2d 1403, 1406, 80 S.Ct. 1343]; *Truck Drivers Union* v. *Riss & Co.* (1963) 372 U.S. 517, 519 [9 L.Ed.2d 918, 920, 83 S.Ct. 789].)

The collective bargaining agreement in question sets forth a three-stage procedure for settling disputes between the parties. First, representatives of the parties are to attempt to adjust the dispute. Second, if the representatives are unable to adjust the disagreement within 48 hours, the issue is submitted to the labor-management committee. Third, if the labor-management committee is unable to agree or adjust any matter, it may be submitted to the Council on Industrial Relations for the Electrical Contracting Industry for final and binding adjudication.

We are of the opinion that the provisions of the agreement setting forth the composition of the labor-management committee contradict the trial court's conclusion that it was intended to or required to operate in a manner of "true arbitration." The members of the committee are selected to represent either labor or management, and not to be independent or neutral. This is further underscored by the fact that four members, *two from each of the parties,* are required to constitute a quorum, and that each party present at the meeting has the right to cast the full votes of its membership at the meeting of the committee.[2]

Respondent Del Mar contends the partisan nature of the committee was exacerbated by the fact the hearing before the committee was conducted in large part by an employee and officer of appellant Local 428. (However, the record also indicates that this officer, Mr. Engi, was

---

[2]We note section 1282, subdivision (d), of the Code of Civil Procedure provides that, "If there is no neutral arbitrator, the powers and duties of a neutral arbitrator may be exercised by a majority of the arbitrators."

not a member of the committee taking part in the decision in any of the three awards.)

In interpreting substantially similar collective bargaining provisions when the business manager of the union not only presented the charges to the labor-management committee but also took part in the committee's decision, a United States District Court, in *Local Union 24, Int. Bro. of Elec. Wkrs. v. Wm. C. Bloom & Co.* (D.Md. 1965) 242 F.Supp. 421, 423-426, held the decision of the labor-management committee constituted an arbitration award and was not capricious, arbitrary or procured by undue means. The court stressed that such a conclusion was mandated by the policies of federal law requiring the methods chosen by the parties to settle labor disputes to be given full latitude and also pointed out that the employer's interests were adequately protected by its representatives on the labor-management committee: "While the procedure of permitting a labor member of the Labor-Management Committee to present charges and then to vote as to whether they are meritorious does not reflect the same degree of objectivity on which the judicial process is founded, yet there is introduced into the adjudicating process the expertise which recent Supreme Court decisions stress as a necessary and desirable feature of resolution of labor disputes. In any event, there was nothing in the evidence to indicate that this was not a procedure to which the parties had agreed, or that it was in any sense unusual. Certainly, there was a complete failure of proof to show that the employer members of the Labor-Management Committee acted as a result of any improper motive, . . . The Court cannot ignore that the decision of the Committee was unanimous, even though, under the agreement, it need have been only by majority vote." (*Id.,* at p. 426.)

The question for the trial court here was not whether the proceedings by the labor-management committee in this case met "the standards of true arbitration in the opinion of [the court]" (as the court apparently considered to be the issue), but rather whether the decision of the labor-management committee was "reached after proceedings adequate under the agreement." (*Humphrey* v. *Moore* (1964) 375 U.S. 335, 351 [11 L.Ed.2d 370, 382-383, 84 S.Ct. 363].)

Therefore, as we have hereinabove discussed, we find that the conduct of the labor-management committee in this case was a proper proceeding under the terms of the collective bargaining agreement and that the trial court's denial of enforcement of the awards must be reversed insofar as it

was based on a conclusion that the procedure had not met the "standards of true arbitration."

We are now called upon to decide whether Del Mar was entitled to further proceedings under the terms of the collective bargaining agreement, so as to make judicial enforcement of the labor-management committee awards improper.

■ Courts have the power to enforce awards only if the award is final and binding on the parties; however, an award under a grievance procedure that is final and binding may be enforced even though the word "arbitration" does not appear in the collective bargaining agreement. (*Truck Drivers Union* v. *Riss & Co., supra,* 372 U.S. at p. 519 [9 L.Ed.2d at p. 920]; see also 48A Am.Jur.2d (1979) Labor and Labor Relations, § 1986, p. 378.)

Although the court enforced the labor-management committee award in *Local Union 24, Int. Bro. of Elec. Wkrs.* v. *Wm. C. Bloom & Co., supra,* 242 F.Supp. 421, when the agreement contained another stage in the procedures to be used in settling disputes, respondent Del Mar distinguishes that case by the fact that "arbitration" under the present agreement is not mentioned until the final stage; and that in *Bloom* there was evidence that the parties considered a decision by the labor-management committee to be final and binding. Respondent suggests that under the present agreement a decision by the labor-management committee is not final and binding.

A reading of *Bloom* and *Riss* together disposes of respondent's first contention. These cases hold that a settlement can be final and binding even though the agreement calls for another stage in the proceedings if the parties cannot reach a resolution, and the fact that this intermediary state is called something other than "arbitration" is not dispositive.

■ Nor is there merit in respondent's second contention. Although the present collective bargaining agreement does not expressly state that a decision by the labor-management committee is final and binding, such a conclusion is an inescapable interpretation of the agreement. The agreement provides in pertinent part: "(d) Should the Labor-Management Committee *fail to agree or to adjust any matter,* such may be submitted jointly or unilaterally by the parties" for binding arbitration.

(Italics added.) Obviously, in this case the labor-management committee did not "fail to agree." Nor did it fail to take action to adjust the matter.

The terms of the agreement, therefore, anticipate those instances when, because of the partisan nature of the labor-management committee—evenly divided between representatives of labor and management—it cannot agree or refuses to take action to adjust a grievance.[3] It is only under such circumstances that the parties to the agreement have the right to submit the issue to stage three of the procedure set forth for the settlement of disputes—arbitration by the Council on Industrial Relations for the Electrical Contracting Industry.

Therefore, we find respondent Del Mar's attempts to distinguish *Local Union 24, Int. Bro. of Elec. Wkrs.* v. *Wm. C. Bloom & Co., supra,* 242 F. Supp. 421 are without merit and the awards of the labor-management committee in this case are found to be final and binding determinations and entitled to judicial enforcement.

■ The next issue is whether Del Mar was entitled to, and denied, due process of law by inadequate notification of the proceedings by the labor-management committee.

The trial court's memo regarding the disposition of appellant's petition to enforce the arbitration awards reflected it had "a serious question whether adequate notice was given" in some instances, and also expressed concern as to other due process questions in the proceedings of the labor-management committee.

The record is devoid of substantial evidence of what procedures for notice and hearing the parties intended to be applicable to the functions of the labor-management committee. The court's ruling seems to indicate it was applying concepts of notice and hearing that are applicable to judicial proceedings, which may or may not be the procedures intended by the parties when establishing the labor-management committee as a stage for adjusting disputes under the contract.

---

[3]The foreseeability of such disagreement deadlocks or inability to settle differences by using such a labor-management committee is noted in Labor Law (Cont.Ed.Bar 1960) Grievance; Arbitration, section 9.31, page 364: "To provide for a decision by vote [by a labor-management committee] is probably fruitless, for the parties are partial, and unless some impartial person is named to a joint committee there is no real hope that it can be unbiased. *But there is no need for impartiality since the committee's work is best done by unanimous vote.*" (Italics added.) In this case, the decisions and awards by the labor-management committee were unanimous.

Thus, on this point, the trial court again failed to consider the critical issue, i.e., whether the proceedings of the labor-management committee were in fact "adequate under the agreement" of the parties. (*Humphrey* v. *Moore, supra,* 375 U.S. 335, 351 [11 L.Ed.2d 370, 383].)

Local 428's petition in the trial court set forth the collective bargaining agreement and the arbitration awards made by the labor-management committee. This established a prima facie case, and respondent Del Mar then had the burden of going forward with the evidence to overthrow the award. (5 Am.Jur.2d (1962) Arbitration and Award, § 156, p. 635.) Although Del Mar, through the declaration of its counsel, set forth general complaints about the notice its client received and the conduct of the labor-management committee meeting, Del Mar failed to show that the procedures the parties intended and used were defective.

Therefore, we find that Del Mar was not denied due process of law by the notification proceedings of the labor-management committee.

■ We are finally called upon to determine whether Del Mar was entitled to a presumption that the trial court found all the facts necessary to support the judgment by virtue of the fact that Local 428 did not request preparation of findings of fact and conclusions of law.

Del Mar contends that Local 428 waived, by failing to request, written findings of fact and conclusions of law, and that this waiver gives rise to a presumption "that the trial court found all facts necessary to support the judgment entered." We disagree.

The trial court announced its intended decision on April 12, 1977. Therefore, Local 428 was entitled to file its request for findings and conclusions on or before April 22, 1977, pursuant to California Rules of Court, rule 232(b). Del Mar's counsel, however, immediately provided a form of judgment to the trial court and the judgment was signed on April 19, 1977, filed on April 20 and entered on April 21, 1977. We agree with Local 428's contention that the trial court's failure to follow the requirements of rule 232 and Del Mar's participation in causing the error belies its present contention that Local 428 waived its right to findings of fact and conclusions of law. Furthermore, no "presumption" of necessary findings of fact to support the judgment arises when the evidence is brought up in the record on appeal, as it is in the present case. (4 Witkin,

Cal. Procedure (2d ed. 1971) Trial, § 310, p. 3118; *Childers* v. *Childers* (1946) 74 Cal.App.2d 56, 59 [168 P.2d 218].)

Therefore, we are of the opinion that Local 428 was excused from the requirement that facts to support the judgment are to be inferred in the absence of findings of fact and conclusions of law because it was not given the proper time to request such findings as required by rule 232(b).

The judgment of the trial court is reversed and the cause remanded with instructions to enter a judgment ordering the enforcement of the awards against respondent Del Mar made by the labor-management committee.

Brown (G. A.), P. J., and Franson, J., concurred.