[Civ. No. 43845. First Dist., Div. Two. Mar. 6, 1980.]

NORTHERN CALIFORNIA DISTRICT COUNCIL OF
HOD CARRIERS, BUILDING AND CONSTRUCTION
LABORERS et al., Plaintiffs and Respondents, v.
PENNSYLVANIA PIPELINE, INC., Defendant and Appellant.

COUNSEL

Monteleone & McCrory and Wilmer E. Windham for Defendant and Appellant.

Van Bourg, Allen, Weinberg & Roger, Victor J. Van Bourg and David A. Rosenfeld for Plaintiffs and Respondents.

OPINION

TAYLOR, P. J.—Pennsylvania Pipeline, Inc. (Employer) appeals from a judgment confirming an ex parte arbitration award in favor of the Northern California District Council of Hod Carriers, Building and Construction Laborers and the Construction, Production and Maintenance Laborers Local Union No. 1130 (hereafter collectively the Union). Employer contends that: 1) it never became bound by the collective bargaining agreement negotiated by the multiemployer association; 2) it was deprived of due process by the ex parte arbitration; 3) the award was contrary to public policy; and 4) venue was improperly laid. For the reasons set forth below, we have concluded that the judgment must be affirmed.

The pertinent facts, substantially as found by the court below, are as follows: The Employer became a member of the Underground Contractors Association of Northern California, Inc. (Association)[1] which was a party to the Laborers' Master Agreement (Master Agreement) with the Union, and in conjunction with a number of other multiemployer associations had negotiated a contract with the Union, which ran from June 1974, to June 1977. Section 9 of the Master Agreement set forth a procedure for the arbitration of grievances.

In November 1975, several disputes arose between the Employer and the Union on the Tuolumne Water District No. 2 Sonora to Columbia Intercepter Job. On November 25, 1975, the Union notified the Association of a grievance between the Employer and the Union; thereafter, the Union advised the Association of subsequent grievances against the Employer relating to the Columbia Interceptor Job. The Union charged that the Employer had appointed a nonunion subcontractor and that the Employer had hired persons other than laborers to perform laborers' work, in violation of certain provisions of the Master Agreement. The Employer's work on the Columbia Interceptor Job occurred between November 3, 1975, and May 13, 1976.

On December 16, 1975, pursuant to the terms of section 9 of the Master Agreement, a board of adjustment convened to hear the Union's grievances. The board of adjustment was comprised of two members appointed by the Association and two members appointed by the Union. The Employer was represented by its president, Peter Disandro, Jr., and John Pestana, the executive director of the Association. The board of adjustment heard and considered the grievances but became deadlocked.

About January 21, 1976, the Association notified the Employer that its membership was terminated, effective January 31, 1976. Thereafter, pursuant to the terms and conditions of section 9 of the Master Agreement, the attorney for the Union wrote to the Association requesting arbitration of the grievances and suggested the names of arbitrators. Robert Burns was selected and recommended June 30, 1976, and July 1, 1976, as hearing dates. By letter dated April 23, 1976, on the letterhead of the Association, Pestana, as executive director of the Association, notified the attorney for the Union that he would be available on

---

[1]The Association was a named defendant below and appeared, but is not a party to this appeal.

the dates selected. On May 11, 1976, the Union attorney notified Burns that the parties had accepted both dates.

On June 30, 1976, the attorney for the Union received a mailgram from the Employer stating that the Employer was not a member of the Association and that any arrangements for settlement of the grievances would have to be mutually agreed upon between the parties. At 10 a.m. on June 30, 1976, the attorney for the Union, with representatives of the Union, appeared in San Francisco at the time and place designated for the regularly scheduled arbitration hearing before Burns. No representative from the Association or the Employer appeared. The hearing was convened at 10:50 a.m. Both oral and documentary evidence was received. On July 20, 1976, Burns, sitting as a neutral fifth member of the board of adjustment, issued an arbitration opinion and award, sustaining the grievances of the Union.

The trial court concluded as a matter of law that: 1) the board of adjustment had jurisdiction to hear the grievances and delegate to Burns the right to hear, decide and issue an opinion and award; 2) the Association was the agent of the Employer at all times relevant and the Employer was bound by the acts and agreements of the Association; 3) through this agency, the Union and the Employer stipulated and agreed in writing to the date, time and place of the arbitration hearing; 4) the Employer violated the Master Agreement; 5) certain persons were deprived of work by the violation of the Master Agreement by the Employer; and 6) the Employer was obligated to pay them the amounts indicated.

In January 1977, the Union filed the instant petition for confirmation of the arbitration award, pursuant to Code of Civil Procedure, section 1285. The court subsequently entered its judgment confirming the award.

The parties agree that the major question on appeal is whether the court properly concluded that the Employer was bound by the arbitration provision of the Master Agreement.

The Employer contends that, at most, it had delegated to the Association only the authority to act as the Employer's agent for its direct or future collective bargaining agreements and, in any event, that this limited agency was revocable and had been revoked.

The record indicates that the Employer executed an application for membership in the Association on July 3, 1975, and paid the $100 membership fee. Above the subscription, in type the same size as the rest of the application, paragraph 1 reads: "That the *certificate of membership* to be issued *shall be subject to the provisions of the ... By-Laws ... in force or hereafter adopted by [the Association] and such ... By-Law ... shall be considered an essential part of the contract of membership between [the Association] and the undersigned*" (italics added).

Section 7 of article I of the bylaws states, in pertinent part: "*Each contractor member* of the Association *grants, appoints and designates the Board* of Directors, or its duly designated nominee *as representative, agent and attorney-in-fact, with full powers to negotiate with all labor union and labor organizations with which the member has or may have collective bargaining relations, and to execute contracts* and amendments *with such organizations for and on behalf of the Council and its members, subject to the approval of the Board of Directors* as provided herein.

"No member of the Association shall sign a collective bargaining agreement that is other and different than the agreement negotiated by the Association for and on behalf of itself and each and every member." (Italics added.)

Section 2 of the Master Agreement provided that the Association was the bargaining agent for all of its present and future members.

Section 16(a) of the Master Agreement provides: "The [overall multi-employer association] and each Signatory Association further warrants and represents that *any person, firm or corporation which may become a member of* [*the* overall multi-employer *association*] or any Signatory Association *shall automatically become subject to and bound by this Agreement*" (italics added).

 The trial court's helpful memorandum opinion accompanying its initial order of confirmation stated that the Employer, by seeking and receiving membership in the Association, become a party to the agreement, and accordingly, was obligated to resolve its differences with the Union through arbitration, as provided in the Master Agreement. The court noted that "Article I, Section 7, of the ... By-Laws

*with its provisions regarding collective bargaining is not in small print or inconspicious,"* and that the Employer had actual knowledge of this provision and knowingly consented to the Association acting on its behalf.

As this matter involves an arbitration provision in a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting interstate commerce, we must apply federal substantive law (*Safeway Stores, Inc.* v. *Brotherhood of Teamsters* (1978) 83 Cal.App.3d 430, 435-437 [147 Cal.Rptr. 835]).

The existence of an underlying agreement to arbitrate is to be decided by a court rather than an arbitrator (*Safeway Stores, supra,* 83 Cal.App.3d 430; *Nolde Brothers, Inc.* v. *Bakery Workers* (1977) 430 U.S. 243 [51 L.Ed.2d 300, 97 S.Ct. 1067]; *Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960 [136 Cal.Rptr. 345].

The role of a court in reviewing the validity of an arbitration award under a collective bargaining agreement is an extremely narrow one. Findings on questions of law or fact by the arbitrator are final and conclusive. Neither the merits of the controversy nor the sufficiency of the evidence to support the arbitrator's award are matters for judicial review. A court must affirm an arbitrator's award if it can in any rational way be derived from the agreement, and can only reverse if there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop (*Safeway Stores, supra,* p. 437).

Where a collective bargaining agreement provides that any contractor joining a party association is bound as an incident of membership, and the association bylaws state that the collective bargaining agreements of the association are binding on all members, a new member becomes bound to a preexisting collective bargaining agreement upon joining the association (*Washington Refrigeration Service Co. and Local Union No. 602, Steam, Refrigeration and General Pipefitters* (1973) 206 N.L.R.B. 130). Once an employer delegates authority to a multiemployer association during or before negotiations of a new collective bargaining agreement, the employer will be held bound to the existing agreement, despite efforts to withdraw from negotiations or

from the association (*Authorized Air Conditioning Co.* v. *N. L. R. B.* (9th Cir. 1979) 606 F.2d 899). The significant fact is the delegation of authority, not the employer's membership in the association (*Cox Corp.* v. *N. L. R. B.* (6th Cir. 1979) 593 F.2d 261, 262). Agency is a question of fact (*N. L. R. B.* v. *R.O. Pyle Roofing Co.* (9th Cir. 1977) 560 F.2d 1370).

It is undisputed that the Employer became a member of the Association. The membership application indicated that the bylaws were an essential part of the agreement between the Association and the members. While section 7 could be more felicitously drafted, it states that "Each contractor[2] member . . . designates . . . [the Board] . . . as representative, agent and attorney-in-fact, with full powers to negotiate with all labor . . . organizations . . . and to execute contracts . . . with such organizations for and on behalf . . . of the [organization]. . . ." We note that in *Authorized Air Co., supra,* 606 F.2d, page 904, as in the instant case, the employer argued that it had not read the bylaw provisions and that it had joined the association for other purposes. Also in point is *Local 24, IBEW* v. *Bloom & Co.* (U.S.D.C. 1965) 59 L.R.R.M. 2545. In *Local 24, IBEW,* the contractor never signed a document in which he agreed to be barred by the collective bargaining agreement between the contractors' association and the union. The employer's conduct in availing itself of the hiring facilities under the agreement was held to be a sufficient indication of the employer's intent to be bound by the agreement and its arbitration provision.

As to the Employer's reasons for joining the Association and its intent to be bound by the Master Agreement, the court properly considered the Employer's conduct. In November, the Employer demanded that the Union supply laborers for the Columbia Intercepter Job. In December, the Employer and the Association participated in the first part of the grievance hearing which was conducted in accordance with procedures set forth in the Master Agreement.

Thus, we conclude that the trial court's interpretation of article I, section 7, was reasonable in the light of the Employer's conduct. ■ An appellate court will accept a reasonable interpretation of a writing

---

[2]We need not discuss the Employer's belated contention that it was not a contractor, but only an affiliate member of the Association and, therefore, not bound by the collective bargaining agreement, pursuant to article I, section 8 of the bylaws. This argument was raised for the first time in the Employer's closing brief; it was not raised below. Accordingly, the Employer is precluded from raising the issue on appeal.

adopted by the trier of fact and will not substitute its own interpretation where extrinsic evidence is introduced in aid of interpreting the writing (*Back* v. *New York Merchandise Co.* (1961) 196 Cal.App.2d 434, 443 [16 Cal.Rptr. 591]). Where substantial evidence supports the trial court's findings of fact, there can be no appellate review of weight and credibility of the evidence (*San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556 [104 Cal.Rptr. 733]). ▇ We hold that the trial court properly concluded that the Employer was bound by the Master Agreement, the Association's existing collective bargaining agreement with the Union.

The Employer next argues that any agency was terminated and revoked when its membership in the Association terminated on January 31, 1976. ▇ Termination of a collective bargaining agreement does not extinguish the duty to arbitrate if a dispute arose during the life of the agreement (*Nolde Brothers, supra,* 430 U.S., p. 251 [51 L.Ed.2d, p. 308]). The right of access to the grievance procedure is deemed "vested" as of the date that the alleged grievance arises, even if arbitration is not demanded until after expiration of the agreement (*General Tire & Rubber Co.* v. *Local 512, Etc.* (D.C.R.I. 1961) 191 F. Supp. 911, affd. 294 F.2d 957). An employer is bound to a contract when, on a theory of apparent authority conveyed to a union, the union understands the multiemployer association to effectively operate for the employer (*N.L.R.B.* v. *R.O. Pyle Roofing Co., supra,* 560 F.2d 1370). ▇ A principal is bound by the authorized acts of agents and those which he has allowed third persons to believe he has authorized (*Smeade* v. *Rosen* (1932) 121 Cal.App. 79 [8 P.2d 507]). The trial court found that the Employer "had actual knowledge of (Article I section 7 of the by-laws) and knowingly consented to the association acting on its behalf long before its last minute withdrawal from the association." ▇ We hold that the trial court properly concluded that the Employer neither effectively withdrew from its obligation under the Master Agreement, nor effectively terminated the agency of the Association.

We turn next to the Employer's contention that it was deprived of due process by the ex parte arbitration proceeding. To so hold would result "in a state of anarchy if the parties ... could avoid decisions by the simple process of taking their dolls and going home" (*Retail Employees* v. *Lion Dry Goods, Inc.* (6th Cir. 1967) 67 L.R.R.M. 2871, 2873, cert. den. 390 U.S. 1013 [20 L.Ed.2d 163, 88 S.Ct. 1264]). ▇ If an agreement to arbitrate is self-executing, an arbitrator does not exceed

his powers in a proceeding without the participation of one of the parties, and over his objections (*Mitchum, Jones & Templeton, Inc.* v. *Chronis* (1977) 72 Cal.App.3d 596 [140 Cal.Rptr. 160]). In an action to vacate an ex parte award, a petitioner must show a refusal, not merely a failure to consider evidence (*Gonzales* v. *Interinsurance Exchange* (1978) 84 Cal.App.3d 58 [148 Cal.Rptr. 282]).

Accordingly, there is no merit to the Employer's contention that he was deprived of due process by the ex parte arbitration (*International Brotherhood of Electrical Workers* v. *Silva* (1979) 96 Cal.App.3d 751, 761 [158 Cal.Rptr. 78]).

We do not deem it necessary to discuss in detail the Employer's contentions that the award contravened public policy as: 1) the subcontractor clause of the underlying agreement operates as an unlawful restraint of trade; 2) the award was punitive and amounts to a forfeiture; and 3) the Union was an unlicensed collection agency.

The Employer's restraint of trade argument is predicated on *Connell Co.* v. *Plumbers & Steamfitters* (1975) 421 U.S. 616 [44 L.Ed.2d 418, 95 S.Ct. 1830], rehearing denied 423 U.S. 884 [46 L.Ed.2d 114, 96 S.Ct. 156]. Connell is inapposite. There, the anticompetitive effect arose from a subcontractor clause that the union had forced on the employer in a separate and noncollective bargaining agreement. Here, the subcontractor clause was part of a collective bargaining agreement (cf. *Cal. Dump Truck* v. *Associated General Contractors* (9th Cir. 1977) 562 F.2d 607).

As to the alleged forfeiture, the face of the award reveals specific and reasoned bases for the award and did not arise from an irrational construction of the provisions of the Master Agreement (see *Lesser Towers, Inc.* v. *Roscoe-Ajex Constr. Co.* (1969) 271 Cal.App.2d 675 [77 Cal.Rptr. 100]). The authorities cited by the Employer do not pertain to arbitration awards or collective bargaining relations. ■ It cannot be urged on appeal that an arbitration agreement is void even if it authorizes penalties, so long as the face of the award or the record sustains a finding of nonforfeiture (*United Farmers Assn. of Cal.* v. *Klein* (1940) 41 Cal.App.2d 766 [107 P.2d 631]). Accordingly, the Employer was precluded from raising it for the first time on appeal.

■ The Employer also contends that the venue for the instant petition did not lay in Alameda County, as the arbitration was held in the

City and County of San Francisco. However, the Employer has waived any claim he may have had as to this issue by filing a response to the Union's petition. Code of Civil Procedure section 396b, so far as pertinent, requires a separate motion for change of venue "without answering or demurring" (*Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal. App.3d 811, 819 [116 Cal.Rptr. 412]). The Employer's failure to file a separate motion for change of venue precludes it from raising the issue on appeal.

Affirmed.

Rouse, J., and Miller, J., concurred.

A petition for a rehearing was denied April 4, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1980.