Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hermandad Independiente de Empleados Telefónicos (HIETEL)<br><br>Recurrida<br><br>v.<br><br>Puerto Rico Telephone Company<br><br>Peticionaria<br><br>Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Jorge L. Torres Plaza, A.)<br><br>Organismo Revisado | Certiorari<br><br>2011 TSPR 100<br><br>182 DPR \_\_\_\_ |

Número del Caso: CC - 2009 - 1034

Fecha: 30 de junio de 2011

Tribunal de Apelaciones:

Región Judicial de San Juan Panel I

Juez Ponente:

Hon. Luis R. Piñero González

Abogado de la Parte Peticionaria:

Lcdo. Carlos Padilla Vélez

Abogado de la Parte Recurrida:

Lcdo. Jaime Enrique Cruz Álvarez

Materia: Revisión de Resolución

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hermandad Independiente de Empleados Telefónicos (HIETEL)<br><br>Recurrida<br><br>v.<br><br>Puerto Rico Telephone Company<br><br>Peticionaria<br><br>Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Jorge L. Torres Plaza, A.)<br><br>Organismo Revisado | CC-2009-1034 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 30 de junio de 2011.

En esta ocasión nos corresponde dirimir si un árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Negociado de Conciliación y Arbitraje) actuó de forma ultra vires al declarar el archivo con perjuicio de un caso de arbitraje laboral entre la Puerto Rico Telephone Company (PRTC) y la Hermandad Independiente de Empleados Telefónicos (HIETEL). Concluimos que el árbitro actuó dentro del margen de discreción que le confiere el ordenamiento jurídico. Por los fundamentos que exponemos a continuación, revocamos el dictamen del Tribunal de Apelaciones.

I

El 24 de junio de 2005 la PRTC despidió a la señora Ivelisse Vargas Gelabert por alegadamente incurrir en violaciones del Reglamento de Disciplina y el Reglamento de Ética de la PRTC. Por no estar conforme con dicho despido, la HIETEL, unión obrera que representa a la señora Vargas Gelabert, presentó una querella ante el Negociado de Conciliación y Arbitraje.

El árbitro señaló una vista para el 3 de febrero de 2006. Al notificar su señalamiento, el árbitro Jorge Torres Plaza incluyó una advertencia que fue repetida en todas las notificaciones posteriores. Ésta reza de la siguiente forma:

...

Se les apercibe que de no comparecer o de comparecer y no estar debidamente preparadas, el árbitro, entre otras cosas, podrá conforme lo dispone el Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos:

1. proceder al cierre del caso con perjuicio.
2. efectuar la vista con la parte compareciente.
3. tomar la acción que estime apropiada, consistente con la más rápida y efectiva disposición de la controversia.

...

Véase, Apéndice, pág. 87. (énfasis suplido.)

La vista fue suspendida a petición de la HIETEL ya que el abogado no se había reunido con la señora Vargas Gelabert. Por segunda ocasión, el árbitro señaló la vista para el 6 de junio de 2006. No obstante, la vista fue

suspendida a solicitud de la HIETEL por el fallecimiento de un familiar.

Posteriormente, la vista fue pautada para el 30 de octubre de 2006. Sin embargo, se suspendió nuevamente a petición de la HIETEL ya que la querellante estaba enferma. Entonces, el árbitro señaló otra vista para el 12 de marzo de 2007. Esta vista también fue suspendida, pero en esta ocasión a petición de la PRTC ya que un testigo no podía comparecer. Nuevamente la vista se calendarizó para el 2 de agosto de 2007. No obstante, la vista fue suspendida a petición de la HIETEL ya que la querellante se encontraría fuera de Puerto Rico.

Por sexta ocasión, se señaló la vista para el 15 de noviembre de 2007. Dicha vista tampoco se celebró. Fue suspendida a petición de la HIETEL por encontrarse en un proceso de conciliación con la PRTC. El árbitro entonces pautó la vista para el 20 de febrero de 2008. Fue suspendida por conflicto en el calendario del abogado de la HIETEL. Por octava ocasión, se señaló vista para el 3 de abril de 2008. No obstante, esa vista tampoco se celebró ya que el abogado de la HIETEL solicitó otra suspensión porque no se había reunido con la señora Vargas Gelabert. De nuevo, el árbitro re señaló la vista para el 9 de junio de 2008, pero ésta también se suspendió a petición de la HIETEL por conflicto en el calendario de su abogado.

Así las cosas, por décima ocasión, el árbitro señaló la vista para el 17 de diciembre de 2008. Esa notificación tiene fecha de 5 de septiembre de 2008 y en ésta se apercibió a las partes que no se concedería ninguna petición de suspensión. A tales fines, la notificación expresó:

> Se apercibe a las partes que no habremos de conceder petición de suspensión alguna que en lo sucesivo se pretenda presentar. El día de la vista, el caso se verá con la parte que comparezca. No se le concederá suspensión a la Unión.

Véase, Apéndice, pág. 110. (Énfasis suplido)

La notificación fue enviada a la licenciada Sonia H. Cruz, gerente del Departamento de Asuntos Laborales de la PRTC y al licenciado Jaime Cruz Álvarez, representante legal de la HIETEL. A pesar de la advertencia realizada por el árbitro de que no se concedería ninguna solicitud de suspensión, el representante legal de la HIETEL solicitó la décima transferencia de la vista. Presentó el 23 de septiembre de 2008 una "Moción Solicitando Transferencia de Vista" en la cual alegó que para la fecha de la vista estaría de vacaciones con su familia. El árbitro no emitió notificación alguna en respuesta a dicha solicitud.

Con posterioridad, el 17 de diciembre de 2008 se celebró la vista, conforme lo había programado el árbitro. Sin embargo, la señora Vargas Gelabert y el abogado de la HIETEL no comparecieron. Surge del

expediente que tampoco se comunicaron con el árbitro para verificar si el señalamiento de vista continuaba en pie. Ante la incomparecencia de éstos, el árbitro ordenó el archivo y cierre de la querella, con perjuicio.

Inconforme, la HIETEL recurrió mediante solicitud de revisión ante el Tribunal de Primera Instancia. Éste expidió el auto solicitado y confirmó la decisión del árbitro de archivar la querella con perjuicio. El foro primario entendió que, según las disposiciones de los Reglamentos para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de 3 de junio de 2003 y de 24 de noviembre de 2008, el árbitro tenía la discreción para declarar el archivo con perjuicio del caso. Fundamentó su decisión en que se trataba de un caso en que se había cancelado la vista en su fondo en nueve ocasiones y en que hubo un apercibimiento expreso de que, en caso de incomparecencia, una de las consecuencias podía ser el archivo del caso.

Aún inconforme, la HIETEL acudió ante el Tribunal de Apelaciones. Éste, tras sopesar los argumentos de las partes, revocó la determinación del foro de instancia. A su juicio, el representante legal de la HIETEL incurrió en conducta constitutiva de demora, abandono y falta de diligencia. Sin embargo, concluyó que el árbitro debió imponerle alguna sanción antes de utilizar la medida extrema de la desestimación. Al revocar, impuso una

sanción de $500 al representante legal de la HIETEL por su incomparecencia a la vista y devolvió el caso al Negociado de Conciliación y Arbitraje.

Inconforme, la PRTC acude ante nos y señala que el foro apelativo intermedio erró al permitir la reapertura del caso pues el árbitro tenía discreción para archivar con perjuicio la querella. Expedimos el auto de certiorari y con el beneficio de la comparecencia de ambas partes, luego de analizar detenidamente el expediente del recurso, pasamos a resolver.

II

A

"Un acuerdo en un convenio colectivo para utilizar el arbitraje como mecanismo de ajuste de controversias crea un foro sustituto a los tribunales de justicia. En efecto, ello representa una sustitución del juez por el árbitro". Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 352 (1999). Véase Lopez v. Destilería Serrallés, 90 D.P.R. 245 (1964).

Por tal motivo, "[l]os procedimientos de arbitraje y laudos emitidos en el campo laboral gozan ante los tribunales de justicia de una especial deferencia por constituir el trámite ideal para resolver disputas obrero-patronales de modo rápido, cómodo, menos costoso y técnico." S.I.U. de P.R. v. Otis Elevator Co., 105 D.P.R. 832, 836 (1977).

Es decir, el arbitraje obrero patronal es un medio más apropiado que los tribunales de justicia a la hora de resolver disputas que surjan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso. Véase, Confederación de Organizadores v. Servidores Públicos Unidos P.R., Op. de 28 de marzo de 2011, 2011 T.S.P.R. 47, pág. 24, 2011 J.T.S. 52, 181 D.P.R. __ (2011); Pérez v. Autoridad Fuentes Fluviales, 87 D.P.R. 118, 127 (1963). Con esto se cumple "con la política pública laboral imperante en esta jurisdicción, la cual exige que las controversias laborales tengan rápida adjudicación y pronto fin". Confederación de Organizadores v. Servidores Públicos Unidos P.R., supra, pág. 24. Véase, además, J.R.T. v. P.R. Telephone Co., Inc., 107 D.P.R. 76, 81-82 (1978).

De este modo, se le confiere gran deferencia a la interpretación que realiza el árbitro de lo acordado en el convenio pues "en Puerto Rico existe una fuerte política pública a favor del arbitraje". S.L.G. v. Nieves Rivera, 179 D.P.R. 359, 368 (2010) y casos allí citados.

El rol del convenio colectivo en el campo laboral es trascendental. Al respecto, hemos mencionado que el convenio colectivo

> representa el fruto de largas y acaloradas horas de discusión entre el patrono y la portavoz de los reclamos de los empleados de éste. La otorgación y firma de un convenio colectivo representa el triunfo del poder de la negociación sobre la fuerza, de la cordura y la razón sobre la temeridad y la violencia, y de

la necesidad que todos tenemos de vivir en armonía los unos con los otros.

U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348, 352 (1985).

La flexibilidad que caracteriza el proceso de arbitraje se logra porque las reglas de procedimiento civil no le aplican. D. Fernández Quiñones, El Arbitraje Obrero Patronal, Colombia, Forum, 2000, pág. 24. Es decir, el árbitro conduce el proceso sin tener que sujetarse al rigor que impone ese cuerpo de reglas. El propósito de esto es respetar uno de los principios básicos del arbitraje que es la finalidad en las dilucidaciones de controversias por medio de un procedimiento más ágil y menos formal. Véase en general, Elkouri & Elkouri, How Arbitration Works, 5ta Edición, Washington D.C., The Bureau of National Affairs Inc.,1997, págs. 10-15.

B

Luego de exponer el marco doctrinal sobre el arbitraje, es necesario precisar bajo cuál reglamento debemos resolver la controversia que tenemos ante nuestra consideración. Para responder esa interrogante es menester que acudamos al convenio colectivo existente entre la PRTC y la HIETEL. Éste, al disponer lo relativo a las controversias sometidas a arbitraje, establece en su Art. 57, sec. 3:

...

Para todos los efectos de este Artículo, las normas del Negociado que prevalecerán serán las

que estaban vigentes al 26 de diciembre de 2002, y ninguna enmienda a las mismas o un nuevo reglamento, serán aplicables bajo este Convenio. La decisión del Árbitro será final e inapelable, la cual será seguida y cumplida por las partes siempre que sea conforme a derecho.
...

Véase, Apéndice del Recurso, pág. 216.

Lo anterior es de especial importancia, toda vez que los foros inferiores utilizaron erróneamente las disposiciones contenidas en reglamentos del Negociado de Arbitraje y Conciliación posteriores a las que estaban vigentes el 26 de diciembre de 2002, en contravención a lo pactado.

Hemos expresado que un convenio colectivo es un contrato entre las partes, al cual le aplican las disposiciones del Código Civil en lo relativo a la materia de contratos. C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 450 (2007); Luce & Co. v. Junta Rel. Trabajo, 86 D.P.R. 425, 440 (1972). Así pues, un convenio colectivo tiene fuerza de ley entre las partes y debe cumplirse conforme con lo que en él se establece. Véanse, Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994; C.F.S.E. v. Unión de Médicos, supra, pág. 451.

Por consiguiente, conforme al convenio colectivo, que es la ley entre las partes, la norma aplicable para resolver la controversia que nos ocupa la establece el Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, Núm. 6065,

de 27 de septiembre de 1999, que era el vigente el 26 de diciembre de 2002.

III

En lo pertinente, el Reglamento Núm. 6065, Íd., establece en su Art. VIII:

> Artículo VIII- Aplazamientos o Suspensiones, Incomparecencias y Tardanzas
>
> a) Todas las posposiciones o suspensiones de vistas serán concedidas a discreción del árbitro. Disponiéndose, que en aquellos casos en que medie justa causa que impida a la parte que solicita la posposición o suspensión comunicarse con el árbitro, ésta podrá elevar dicha solicitud ante la consideración del Director del Negociado de Conciliación y Arbitraje o la persona que lo sustituya.
>
> b) Para poder considerar solicitudes de aplazamiento o suspensión de vistas, la parte interesada deberá someter por escrito la solicitud al árbitro, indicando las razones, por lo menos con cinco (5) días laborables de antelación a la fecha de la vista, salvo en circunstancias extraordinarias, y deberá notificar simultáneamente a la otra parte.
>
> c) Incomparecencias- Si una de las partes, o ambas, no comparecen a la vista luego de haber sido notificada por el árbitro, sin haber solicitado y conseguido aplazamiento o suspensión de la vista, el árbitro:
>
>> 1. podrá proceder al cierre del caso con perjuicio si la incomparecencia es de la parte querellante;
>>
>> 2. o, si la parte contraria es la que no comparece, podrá proceder con la celebración de la vista y emitir su decisión sólo a base de la prueba presentada por la parte querellante;
>>
>> 3. o, si ninguna de las partes comparece, podrá tomar la acción que estime apropiada, consistente con la más rápida y efectiva disposición de la controversia.

...

(Énfasis suplido.)

Esta disposición del Reglamento es en extremo diáfana. "[E]s tan clara que hiere la retina con la intensidad de su luz". P.R. Am. Sugar Refinery Inc. v. Domenech, Tes; 46 D.P.R. 602, 609 (1934). Es decir, un análisis del Reglamento Núm. 6065, supra, revela que el árbitro ostentaba la discreción de archivar el caso con perjuicio ante la incomparecencia de la parte querellante que no solicita y obtiene la suspensión de la vista señalada. Precisamente eso fue lo que ocurrió en este caso. Ante la constante incomparecencia de la parte querellante, el árbitro ejerció su discreción y desestimó la acción.

Hemos mencionado que la discreción se nutre "de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 770 (1977). Asimismo, "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 658 (1997). (Cita omitida.)

De conformidad con lo anterior, el árbitro contaba con discreción para decretar el archivo con perjuicio del caso ante la incomparecencia de la señora Vargas Gelabert, debido a que ésta no consiguió la suspensión

que solicitó, como requiere el Reglamento Núm. 6065, supra.

Coincidimos con el Tribunal de Apelaciones en que la medida de la desestimación es extrema. No obstante, el árbitro no abusó de su discreción al desestimar la querella. El caso llevaba alrededor de tres años sin que se celebrara vista alguna debido a nueve suspensiones, ocho de ellas procuradas por la parte promotora, a saber, la señora Vargas Gelabert y la HIETEL. Éstas no mostraron la diligencia necesaria para ejercer su derecho y efectuar el proceso de arbitraje. Por el contrario, su patrón de solicitar suspensiones reiteradamente demuestra, como mínimo, dejadez y desinterés de su parte.

La PRTC señaló que reabrir el proceso de arbitraje podría causarle un gran perjuicio. Fundamentó su posición en que por tratarse de un caso de despido, el patrono tiene el peso de la prueba y las continuas posposiciones pueden producir que los testigos no estén disponibles y aun cuando estuvieran disponibles, el paso del tiempo puede afectar el recuerdo de los sucesos. La contención de la PRTC es correcta.

Aunque en los procesos de arbitraje no se puede violar la vertiente procesal del debido proceso de ley, mencionamos en J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 69 (1987), que "esto no significa que la implantación de un procedimiento de arbitraje que ha sido pactado previamente dependa de los deseos de una de las

partes de comparecer al mismo". Además, expresamos que esto "resultaría en un estado de anarquía si las partes pudieran eludir las decisiones por el simple hecho de no comparecer". Íd. Véase, además, Hod Carriers v. Pennsylvania Pipeline, 108 L.R.R.M. 2550 (1980), 103 Cal. App. 3d, 163, 172 (Cal. App. 1st Dist. 1980). En J.R.T. v. Hato Rey Psychiatric Hosp., supra, la parte que no compareció al proceso de arbitraje fue la querellada. Sin embargo, el ratio de ese caso es extensivo al que nos ocupa, en el que la parte que no comparece es la querellante.

El foro apelativo intermedio fundamentó su decisión de permitir la reapertura del caso en que el "árbitro debió primero amonestar y sancionar al abogado, además de advertirle a la HIETEL que si el problema de las suspensiones no se corregía, la querella podía ser desestimada, dándole así oportunidad para que corrigiera el problema". Apéndice, pág. 35.

En otras palabras, el Tribunal de Apelaciones aplicó al proceso de arbitraje la Regla 39.2(a) de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, que era la vigente al momento en que se desestimó la querella.[1] En específico, la regla rezaba de la siguiente forma:

Regla 39.2 Desestimación

(a) Si el demandante dejare de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a

---

[1] El análisis es el mismo al amparo de las nuevas Reglas de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V.

solicitud del demandado, podrá decretar la desestimación del pleito o de cualquier reclamación contra él o la eliminación de las alegaciones, según corresponda.

Cuando se trate de un primer incumplimiento la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado de la parte de la situación y se le haya concedido oportunidad para responder. Si el abogado de la parte no respondiese a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.

(b)...

(c)...

El foro apelativo intermedio concluyó que no procedía la desestimación del proceso de arbitraje como primera sanción. En cambio, le impuso una sanción de $500 al abogado de la HIETEL. Erró el Tribunal de Apelaciones al así proceder.

Como se mencionó anteriormente, las Reglas de Procedimiento Civil no regulan el procedimiento de arbitraje pues se busca que éste sea flexible y ágil. Véase la Sección 15 de la *Uniform Arbritation Act* que produce la *National Conference of Commissioners of*

*Uniform State Laws*, que le otorga una gran discreción al árbitro a la hora de conducir el proceso de arbitraje.[2]

Por tal motivo, el Reglamento Núm. 6065, supra, descartó el uso de las Reglas de Procedimiento Civil al disponer en su Artículo X, inciso (a) que: "[l]as reglas de evidencia y de procedimiento en los tribunales o de agencias administrativas no serán de aplicación al procedimiento de arbitraje". De este modo, el Reglamento 6065, supra, eliminó la posibilidad de que las Reglas de Procedimiento Civil pautaran el trámite del arbitraje. En cambio, las reglas pueden servir de guías, siempre que no contradigan lo pactado en el convenio ni frustren la flexibilidad y agilidad que son inherentes al proceso de arbitraje.

Precisamente, el Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico de 24 de noviembre de 2008, eliminó toda referencia a las Reglas de Procedimiento Civil y en lo concerniente a las Reglas de Evidencia dispuso "que podrán utilizarse como guías en las vistas de arbitraje, pero se aplicarán flexiblemente". Apéndice, pág. 293.

Así, para poder saber cuál es el cuerpo procesal que va a regular el arbitraje, es necesario acudir al convenio colectivo y auscultar qué fue lo que se pactó.

---

[2] En lo pertinente, el texto en inglés lee de la siguiente manera: "*An arbitrator may conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding...*".

Véase, Elkouri & Elkouri, op cit., págs. 313-315. En este caso, el cuerpo procesal que regula el procedimiento de arbitraje es el Reglamento Núm. 6065, supra, que fue el que se escogió en el convenio colectivo. Éste le concedía al árbitro la facultad de desestimar la querella ante la incomparecencia de la parte que promueve el arbitraje.

IV

En suma, la parte querellante debió actuar diligentemente en la tramitación de su caso. Al no hacerlo, quedó sujeta a que le desestimaran la querella por su dejadez y negligencia. El Reglamento Núm. 6065, supra, le otorgaba la facultad discrecional al árbitro de desestimar la querella. Así lo hizo y no abusó de su discreción.

Por los fundamentos anteriormente expuestos, se revoca la sentencia del Tribunal de Apelaciones. Se confirma la decisión del árbitro de desestimar la querella.

Se dictará Sentencia de conformidad.


RAFAEL. L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hermandad Independiente de Empleados Telefónicos (HIETEL)<br><br>Recurrida<br><br>v.<br><br>Puerto Rico Telephone Company<br><br>Peticionaria<br><br>Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Jorge L. Torres Plaza, A.)<br><br>Organismo Revisado | CC-2009-1034 |

SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia del Tribunal de Apelaciones. Se confirma la decisión del árbitro de desestimar la querella.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo