

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| EL Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Jeffrey Hernández García<br><br>Peticionario | Certiorari<br><br>2012 TSPR 140<br><br>186 DPR \_\_\_\_ |

Número del Caso: AC-2011-135

Fecha: 17 de septiembre de 2012

Tribunal de Apelaciones:

> Región Judicial de Bayamón

Abogado de la Parte Peticionaria:

> Lcdo. Félix Rivera Carrero
> Lcdo. Ramón A. Pérez González

Oficina del Procurador General:

> Lcdo. Luis Román Negrón
> Procurador General
>
> Lcda. Lisa M. Durán Ortíz
> Procurador General Auxiliar

Materia: Ley del Registro de personas convictas por delitos sexuales y abuso contra menores — Apelación retroactiva del Art. 2 de la Ley Núm. 243-2011; personas que serán incluidas en el registro

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

   Recurrido

      v.                      AC-2011-135

Jeffrey Hernández García

   Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo


San Juan, Puerto Rico, a 17 de septiembre de 2012.

Mediante el presente caso interpretamos la reciente Ley Núm. 243-2011, que introdujo importantes enmiendas a la Ley Núm. 266-2004 conocida como Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores.

Así, determinamos el efecto de algunas de esas enmiendas sobre una persona cuyo nombre fue inscrito en el referido registro, como consecuencia de haberse declarado culpable por el delito de maltrato de menores que establece el Art. 75 de la Ley Núm. 177, *infra*, pero cuya causa fue sobreseída después de haber cumplido con el programa de desvío que provee el Art. 80 de la propia Ley Núm. 177, *infra.*

Además, pautamos si tales enmiendas deben tener efecto retroactivo.

**I**

El Sr. Jeffrey Hernández García (peticionario) fue acusado por infracción al Art. 75 de la Ley Núm. 177-2003,[1] conocida como Ley para el Bienestar y Protección Integral de la Niñez.[2] En la acusación, únicamente se alegó que el peticionario maltrató a su hija de un año de edad al insultarla verbalmente. Así las cosas, el peticionario suscribió un preacuerdo con el Ministerio Público en virtud del cual hizo alegación de culpabilidad y recibió el beneficio del programa de desvío dispuesto en el Art. 80 de la Ley Núm. 177, *supra*.[3] Conforme a ello, el Tribunal de Primera Instancia paralizó los procedimientos y concedió al señor Hernández García el privilegio de la libertad a prueba por el término de un año.

Una vez el peticionario cumplió con el desvío, el Tribunal de Primera Instancia archivó el caso y ordenó el sobreseimiento del mismo. Sin embargo, y como consecuencia del proceso, el nombre del peticionario fue

---

[1] El Art. 75 de la Ley Núm. 177 dispone, en lo pertinente, que:

> Todo padre, madre o persona responsable por el bienestar de un menor o cualquier otra persona que por acción u omisión intencional que cause daño o ponga en riesgo a un menor de sufrir daño a su salud e integridad física, mental o emocional, incluyendo pero sin limitarse a incurrir en conducta constitutiva de delito sexual, incurrir en conducta constitutiva de violencia doméstica en presencia de menores, incurrir en conducta obscena o la utilización de un menor para ejecutar conducta obscena (…).

[2] 8 L.P.R.A. sec. 450c.

[3] 8 L.P.R.A. sec. 450h.

incluido en el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores (Registro), creado por la Ley Núm. 266-2004.[4] Posteriormente, y a solicitud del peticionario, el Tribunal de Primera Instancia ordenó al Superintendente de la Policía devolver al peticionario las huellas dactilares y fotografías que le fueran tomadas como parte de la investigación criminal realizada. A pesar de dicha orden, la Policía continuó tomándole las huellas dactilares y fotografías al peticionario cada año. Ante esta situación, el señor Hernández García acudió al Tribunal de Primera Instancia y solicitó que se le ordenara a la Policía a que se abstuviera de tomarle fotos y huellas dactilares cada año y, además, que se eliminara su nombre del Registro.

Luego de varios trámites procesales, el Tribunal de Primera Instancia celebró una vista argumentativa sobre la solicitud del peticionario en la que determinó la eliminación del peticionario del Registro. No obstante, el Ministerio Público presentó una moción de reconsideración en la cual argumentó que, según decisiones recientes del Tribunal de Apelaciones, el señor Hernández García debía considerarse como "convicto" bajo la Ley Núm. 177, *supra*, por lo que el peticionario debía permanecer en el Registro. Luego de evaluar los argumentos de ambas partes, el Tribunal de Primera Instancia emitió una resolución en la que determinó que

---

[4] 4 L.P.R.A. sec. 536 *et seq.*

ciertamente el peticionario debía permanecer en el Registro.

Inconforme con la resolución del Tribunal de Primera Instancia, el señor Hernández García presentó ante el Tribunal de Apelaciones un recurso de *certiorari* en el cual solicitó la revocación de la resolución. Sin embargo, el Tribunal de Apelaciones confirmó al Tribunal de Primera Instancia fundamentado en que la alegación de culpabilidad del peticionario por el delito de maltrato de menores –Art. 75 de la Ley Núm. 177, *supra*- debía considerarse como una convicción, aunque la persona se haya beneficiado del programa de desvío. Por lo tanto, el peticionario debía permanecer en el Registro.[5] Específicamente, el Tribunal de Apelaciones señaló lo siguiente:

> A la luz del análisis realizado, concluimos que el peticionario es un convicto, bajo las disposiciones de la Ley [Núm.] 177 y que no procede que este Tribunal, por *fiat* judicial, establezca excepciones no contempladas en el estatuto. La Ley Núm. 266 no contempla excepciones ni concede discreción al Tribunal para eximir a determinados convictos del requisito de registrarse.[6]

En desacuerdo con la decisión del Tribunal de Apelaciones, el señor Hernández García presentó un recurso de apelación ante esta Curia en el que señaló, en síntesis, que había errado el foro apelativo intermedio al determinar que este era un convicto bajo las

---

[5] Apéndice de la Petición de apelación, págs. 149-150.

[6] Íd., pág.151.

disposiciones de la Ley Núm. 177, *supra*, y por lo tanto debía permanecer en el Registro.

Ahora bien, estando en turno el recurso para consideración por parte de esta Curia, el 27 de enero de 2012, la Oficina del Procurador General compareció mediante una "*Moción desestimación por academicidad*". A través de esta moción el Procurador General señaló que mediante la aprobación de la Ley Núm. 243, *supra*, el estado de derecho en la Ley Núm. 177, *supra*, cambió, concediéndole al peticionario lo que este solicita y, por lo tanto, haciendo su recurso académico. No obstante, decidimos atender la "*Moción desestimación por academicidad*" presentada por el Procurador General, como una allanándose a lo solicitado en el recurso de *certiorari*.[7] Siendo así, y en virtud de la Regla 50 del

---

[7] Decidimos atender la "*Moción desestimación por academicidad*" presentada por el Procurador General como una allanándose a lo solicitado en el recurso de *certiorari*, por lo siguiente: en el presente caso el Tribunal de Primera Instancia emitió una Resolución el 29 de julio de 2011, determinando que el peticionario permanezca en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores (Registro). Véase Apéndice petición de *Certiorari*, pág. 78. Tal determinación fue confirmada por una sentencia final del Tribunal de Apelaciones el 16 de noviembre de 2011. Véase Apéndice petición de *Certiorari*, pág. 132. Con relación a esa sentencia final es que el peticionario recurre en tiempo ante esta Curia. Es entonces que sobreviene un cambio en la ley que crea un estado de derecho distinto –en esta instancia y por lo que explicamos en la Opinión– en beneficio del peticionario.

Ahora bien, con su "*Moción desestimación por academicidad*" el Procurador General sometió también una copia de una "*Moción Informativa*" que el Ministerio Público presentó ante el Tribunal de Primera Instancia el 25 de enero de 2012, esto es, 2 días antes de que se presentara ante este Tribunal la "*Moción desestimación por academicidad*". Véase Anejo Núm. 2 *de Moción desestimación por academicidad*. En esta "Moción informativa" el Ministerio Público le solicita al Tribunal de Primera Instancia "que tome conocimiento de que el Ministerio Público no habrá de oponerse a la eliminación del señor Hernández García del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores". Íd. Sin embargo, es menester señalar que en la etapa procesal en la que se encuentra este caso el foro primario no puede reconsiderar su posición puesto

Reglamento del Tribunal Supremo, 2011 T.S.P.R. 174, resolvemos.

## II

### A. *Ley Núm. 177-2003 conocida como Ley para el Bienestar y la Protección Integral de la Niñez*[8]

La Ley Núm. 177, *supra*, renfocó la política pública en Puerto Rico hacia la concertación de esfuerzos privados, comunitarios, familiares y gubernamentales con énfasis en la reunificación y el fortalecimiento de las familias.[9] El Art. 3 de esta Ley creó como nueva política pública del Estado el asegurar el mejor interés, la protección y el bienestar integral de la infancia y la adolescencia y que, en el deber de asegurar ese bienestar, deben proveerse oportunidades y esfuerzos razonables que permitan conservar los vínculos familiares y comunitarios cuando ello no les perjudique.[10]

Como parte de esa política protectora, la Ley Núm. 177, *supra*, tipificó delitos, impuso penalidades, y creó medidas y mecanismos protectores necesarios para proteger

que ha perdido su jurisdicción con relación a aquellas materias o asuntos que se cuestionan en el recurso.

Siendo así, es claro que lo único que ha ocurrido en el caso de autos es un cambio en la norma cuestionada, más no así en las circunstancias que provocaron la apelación del peticionario pues este permanece, conforme a la sentencia del Tribunal de Apelaciones que confirma la resolución del foro de instancia, inscrito en el mencionado Registro. De hecho, no podría ser de otra forma en vista de que cualquier acción en pro de eliminar al peticionario del mencionado registro sería, hasta que no advenga final y firme la decisión de esta Curia, en violación a una resolución final de un Tribunal con jurisdicción.

[8] 8 L.P.R.A. sec. 444 *et seq.*

[9] Estrella, Monge v. Figueroa Guerra, 170 D.P.R. 644 (2007).

[10] Íd.

a los menores. Esta legislación establece un procedimiento dirigido a velar por el bienestar de los menores al tiempo que propende a la rehabilitación de los padres para que éstos puedan ejercer su deber correctamente.[11] Relacionado con la consecución de esa rehabilitación, el Art. 80 de la Ley Núm. 177, *supra*, estableció un procedimiento de desvío que tienen disponible -a discreción del tribunal- aquellos primeros transgresores de esta Ley. En lo pertinente, este artículo dispone que:

> En cualquier caso en que una persona que no haya sido previamente convicta por violar las disposiciones de esta Ley o de cualquier otra ley de Puerto Rico o de los Estados Unidos relacionada con conducta maltratante hacia menores, incurra en conducta tipificada como delito en esta Ley, el tribunal podrá, motu propio o a solicitud de la defensa o del Ministerio Fiscal, después de la celebración del juicio y sin que medie una convicción, o luego de hacer una alegación de culpabilidad, suspender todo procedimiento y someter a dicha persona a un programa de desvío para la reeducación y readiestramiento de personas que incurren en conducta maltratante contra menores. (…)

> Si la persona beneficiada del programa de desvío que establece este artículo cumple a cabalidad con las condiciones impuestas como parte del mismo, el Tribunal podrá, en el ejercicio de su discreción y previa celebración de vista, ordenar el sobreseimiento del caso en su contra. El sobreseimiento bajo este artículo se realizará sin pronunciamiento de sentencia del tribunal, pero éste conservará el expediente de la causa con carácter confidencial, no accesible al público y separado de otros récords, a los fines exclusivos de ser utilizado por los tribunales al determinar si en procesos subsiguientes la persona cualifica para el beneficio provisto en este artículo.

> El sobreseimiento del caso no se considerará como una convicción a los fines de las descualificaciones o incapacidades impuestas por ley a los convictos por la comisión de algún delito y la persona cuyo caso haya sido sobreseído

---

[11] Estrella, Monge v. Figueroa Guerra, supra.

> tendrá derecho a que el Superintendente de la Policía le devuelva cualesquiera récords de huellas digitales y fotografías que obren en poder de la Policía de Puerto Rico tomadas en relación con la violación de ley por la cual fue procesado.[12]

Ahora bien, el Art. 80 de la Ley Núm. 177, *supra*, creó interpretaciones inconsistentes sobre lo que se consideraba un "convicto" para efectos de la ley. Por ejemplo, un panel del Tribunal de Apelaciones interpretó que "convicto" era solamente aquella persona contra la cual se había dictado un fallo de culpabilidad imponiéndosele una sentencia y, por lo tanto, aquél que disfrutaba de un desvío no podía considerarse convicto para ser inscrito en el Registro.[13] Por otro lado, otros paneles del foro apelativo intermedio interpretaron que las personas que hacían alegación de culpabilidad y recibían el beneficio del programa de desvío de la Ley Núm. 177, *supra*, se consideraban convictos y, por lo tanto, estaban obligados a estar inscritos en el Registro.[14]

---

[12] 8 L.P.R.A. § 450h

[13] Véase Pueblo v. Rivera Mojica, KLC2009-01591.

[14] Véase Pueblo v. Battle Torres, KLCE2009-00181; Pueblo v. Pérez Flores, KLCE2010-00861.

**B. *Ley Núm. 266-2004 conocida como Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores*[15]**

El 29 de julio de 1994, en una pequeña comunidad central del estado de New Jersey, Jesse Timmendequas violó y asesinó a Megan Kanka, una niña de 7 años de edad quien -junto a sus padres- era su vecina. Al momento del asesinato de esta niña, ya Timmendequas contaba con dos convicciones previas por delitos sexuales contra menores. En aquel entonces este terrible crimen acaparó la atención nacional, principalmente porque los padres de la pequeña Megan iniciaron una campaña para presionar a la legislatura de New Jersey a que aprobaran una ley mediante la cual los ciudadanos pudieran ser notificados de la presencia de ofensores sexuales en su comunidad. Así, en octubre 31 de 1994, la legislatura de New Jersey aprobó una ley que requiere la creación de un registro de ofensores sexuales en ese estado, haciendo además mandatorio la notificación a los residentes de las comunidades en cuanto la presencia de este tipo de convicto.[16]

Después de la acción tomada por New Jersey, muchos estados copiaron la iniciativa estableciendo registros de ofensores sexuales bajo sus propios términos y parámetros. En 1994 el Congreso de los Estados Unidos

---

[15] 4 L.P.R.A. sec. 536 *et seq*.

[16] En realidad, esta no fue la primera ley requiriendo tal tipo de registro en un estado de los Estados Unidos. En 1990 el estado de Washington ya había aprobado el "Community Protection Act" in 1990. Wash. Rev. Code Ann. Sec. 4.24.550.

aprobó la Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Act[17] (conocida como "Megan's Law"), mediante la cual se estimuló a los estados a aprobar leyes estableciendo este tipo de registros.[18] Desde entonces y ante la presión tanto de la opinión pública como del Congreso de los Estados Unidos, cada estado ha adoptado alguna versión de la "Megan's Law".

Así, el 9 de septiembre de 2004 se aprobó en Puerto Rico la Ley Núm. 266, *supra*, que creó el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores. El propósito de este registro es la protección de la comunidad contra actos de abuso sexual y abusos contra menores, además de servir como un medio para garantizar la seguridad, protección y bienestar general.[19] Así se señala claramente en su exposición de motivos al indicar que "el Estado tiene la obligación de proteger a la ciudadanía y a las víctimas de delitos".[20] Y es que, existe un patente peligro de reincidencia en la comisión de delitos que implican crímenes sexuales o que

---

[17] 42 U.S.C. Sec. 14071 (1994 & Supp. IV 1998).

[18] El Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Act realmente no hacía mandatorio la aprobación de este tipo de ley por los estados, sino que advertía que aquellos estados que no las aprobaran perderían el 10% de la subvención federal para programas de justicia criminal otorgada bajo el "Byrne Program".

[19] M. Rivera Negrón, Legislación sobre los derechos de las víctimas, 44 Rev. Jur. U.I.P.R. 161, 182 (2010).

[20] Exposición de Motivos Ley Núm. 266. Véase además, Art. 1 de la Ley Núm. 266.

constituyen abuso contra menores, lo que representa un riesgo y puede traducirse en graves daños a las posibles víctimas.[21]

En vista de lo anterior, la Asamblea Legislativa entendió que existía la necesidad de que tanto las agencias de orden público como la comunidad conozcan el paradero de aquellas personas que han sido convictas de delitos de esta naturaleza.[22] En armonía con todo lo anterior, el Art. 1 de esta ley dispone, en lo pertinente, lo siguiente:

> Ante el peligro que representa que la persona convicta por delitos de esta naturaleza incurra nuevamente en esa conducta y ante el riesgo que puede representar y el daño que puede causar una persona con tendencia irreprimida de cometer delitos sexuales es necesario establecer un Registro en el que se anote su dirección y que contenga información sobre su persona y otros datos relevantes. **Por medio de este Registro se mantendrán informadas todas las personas o entidades que lo soliciten, sobre el paradero de aquellas personas que han sido convictas de delitos sexuales o abuso contra menores, según se definen estos términos en la Ley, cuando éstas se reintegren a la libre comunidad.** El Registro que se crea mediante esta Ley **no tiene un propósito punitivo; es un medio para garantizar la seguridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección de nuestra sociedad.** (Énfasis suplido.)

## C. *Ley 243-2011*

Recientemente, se aprobó la Ley Núm. 243-2011, con el propósito de enmendar la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores,

---

[21] Exposición de motivos de la Ley Núm. 266.

[22] Íd.

Ley Núm. 266, *supra*.[23] En la exposición de motivos de la ley, la Asamblea Legislativa explicó que esta se creó con el propósito de atemperar la Ley Núm. 266, *supra*, a las disposiciones de la Ley Federal "Adam Walsh Child Protection and Safety Act of 2006", también conocida como "Sex Offender Registration and Notification Act" (SORNA). En su exposición de motivos la Ley Núm. 243 dispone lo siguiente:

> La Ley [SORNA] de 2006 establece unas obligaciones mínimas a los estados y territorios de los Estados Unidos, con respecto al registro de personas convictas por delitos sexuales. En particular, dicho estatuto establece una revisión completa de los estándares nacionales para el registro y notificación de los ofensores sexuales, designada para fortalecer y aumentar la efectividad del registro para la seguridad del público. Además, sus disposiciones deberán ser implementadas en todas las jurisdicciones de Estados Unidos de América, los cincuenta (50) estados, los territorios, incluyendo a Puerto Rico y las naciones indígenas federalmente reconocidas. Entre las disposiciones sobresalientes de esta legislación federal se encuentra el establecimiento de unas guías mínimas publicadas por el Departamento de Justicia Federal para ser cumplidas por todas las jurisdicciones de Estados Unidos. Las guías revisadas fueron aprobadas el 2 de julio de 2008. Federal Register Vol. 73, No. 128. Estas guías establecen unos estándares mínimos de cumplimiento. Sin embargo, no prohíbe que los estados, sus territorios y las naciones indígenas adopten medidas adicionales más estrictas que suplementen las guías.[24]

En lo pertinente al caso de autos, la Ley Núm. 243, *supra*, enmendó la Ley Núm. 266, *supra*, añadiendo nuevas definiciones y, en específico, estableciendo tres clasificaciones de lo que se considerará un "ofensor

---

[23] Esta ley también enmendó el Art. 8 de la Ley Núm. 175 de 1998, conocida como Ley del Banco de Datos de ADN de Puerto Rico.

[24] Véase, Exposición de Motivos de la Ley Núm. 243.

sexual" para efectos del Registro de la Ley Núm. 266, *supra*. Además, se dispone sobre los deberes de la persona incluida en el Registro y los deberes de las agencias que mantienen la información del Registro actualizada.

**D. Art. 1 de la Ley Núm. 243, *supra***

Para aclarar de manera concluyente quién se considera "convicto" para efectos del Registro, la Ley Núm. 243, *supra*, definió por primera vez este término. Así, el Art. 1 de la Ley Núm. 243 enmendó el Art. 2 de la Ley Núm. 266 para establecer que "convicto" es toda persona convicta por algún delito, sus tentativas o conspiraciones, según establecidos en la propia Ley, e incluye, además, a "toda persona que disfrute de libertad bajo palabra, condicionada, libertad a prueba o **algún método de cumplimiento alterno de la pena de reclusión**, por los delitos, sus tentativas o conspiraciones, establecidas en esta Ley".[25] (Énfasis suplido.) Quiere decir entonces, que se considerará convicto a toda persona que cumpla bajo cualquier método alterno la pena de reclusión, como lo es el programa de desvío de la Ley Núm. 177, *supra*. Además, y como adelantamos, el Art. 1 de la Ley Núm. 243 también enmendó el Art. 2 de la Ley Núm. 266 para establecer quién se considerará un "ofensor sexual", estableciendo tres clasificaciones basadas en el delito sexual cometido: ofensor sexual tipo I, ofensor sexual tipo II y ofensor sexual tipo III.

---

[25] Art. 2(1) de la Ley Núm. 266, según enmendada.

Por otra parte, y muy pertinente al caso de autos, el Art. 2(8)(iii) de la Ley Núm. 266, *supra*, según enmendada, ahora dispone que se considerará un ofensor sexual tipo I aquella persona que incurra en el "**delito de maltrato a menores, según establecido en los Artículos 75 y 76 de la Ley Núm. 177, según enmendada, cuando se incurre en conducta constitutiva de abuso sexual**". (Énfasis suplido.) De manera que, una persona que infringe el Art. 75 de la Ley Núm. 177, *supra*, se considerará ofensor sexual tipo I y se registrará en el Registro, **únicamente** si su conducta constituyó abuso sexual.

**E.** *Art. 2 de la Ley Núm. 243, supra*

El Art. 2 de la Ley Núm. 243, *supra*, enmendó el Art. 3 de la Ley Núm. 266, *supra*, para establecer cuáles personas tendrán ahora la obligación de aparecer en el Registro. En lo pertinente, este artículo dispone que se registrarán los ofensores sexuales tipo I, ofensores sexuales tipo II y ofensores sexuales tipo III. Además, el inciso (c) de este mismo artículo expresa que también se registrarán las personas convictas que disfrutan de algún método alterno de cumplimiento de la pena de reclusión por haber cometido alguno de los delitos enumerados en el Art. 3 de la Ley Núm. 266, según

enmendada.[26]  Sin embargo, el inciso (d) de este artículo dispone que:

> **Las personas que al momento de la aprobación de esta Ley se encuentren** recluidas o **participando de algún programa de desvío,** tratamiento o rehabilitación de la Administración de Corrección, o que posterior a la aprobación de esta Ley sean sometidos a dichos programas, por la comisión de alguno de los delitos enumerados o sus tentativas o conspiraciones en el Art. 2 de esta Ley. **Disponiéndose que en estos casos, una vez el acusado cumpla con las condiciones impuestas por el Tribunal, y éste ordene el sobreseimiento de la acción criminal,** según lo disponen las leyes pertinentes a dichos programas, **el Sistema eliminará la inscripción del acusado en el Registro aquí establecido.** (Énfasis suplido.)

De lo anterior podemos colegir que a partir de la aprobación de la Ley Núm. 243-2011, una vez la persona ha cumplido con el programa de desvío y el tribunal ha ordenado el sobreseimiento de la acción criminal, se deberá eliminar el nombre del ciudadano del Registro.

**F. Art. 15 de la Ley Núm. 243,** *supra*

El Art. 15 de la Ley Núm. 243, *supra*, -"Vigencia"- tiene como propósito establecer cuándo comenzarán a regir todas las enmiendas que el estatuto introduce a la Ley Núm. 266, *supra*, señalando que las mismas tendrían vigencia inmediata a la aprobación de la Ley.  No obstante, este artículo también establece que las disposiciones de esa ley -con la excepción de dos instancias- **podrán** tener efecto retroactivo.[27]  Al

---

[26] Art. 3(c) de la Ley Núm. 266, según enmendada.

[27] Este Art. 15 exceptúa de esta retroactividad los incisos (f) y (g) del Art. 4, señalando que los mismos tendrán efecto prospectivo. Estos incisos expresan la prohibición que tienen las personas inscritas en el Registro de establecer su residencia a 500 pies de

utilizar la palabra "podrán" es evidente que el legislador parece haberle imprimido un carácter discrecional a la aplicación retroactiva de todas aquellas disposiciones que expresamente este no exceptuó.[28] Así también lo reconoce el Procurador General en su *"Moción de desestimación por academicidad"*, al hablar del "efecto retroactivo **discrecional** de la Ley Núm. 243". (Énfasis en el original.)[29]

Ahora bien, el Art. 9 del Código Penal de 2004 establece el principio de favorabilidad.[30] Este artículo dispone sobre la aplicación retroactiva de una ley penal que favorece a una persona imputada de delito. En lo pertinente, el Art. 9 dispone lo siguiente:

> (a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
>
> **(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarlas, se aplicará retroactivamente.**
>
> (c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar

---

una escuela o cuido de niños, y la obligación de la agencia concernida de notificar al ofensor sexual con relación a esa prohibición.

[28] Estos incisos son el (f) y (g) del Art. 4 de la ley. No discutimos dichos artículos por no ser pertinente a la controversia que nos ocupa.

[29] Véase *"Moción de desestimación por academicidad"* del Procurador General, pág. 7.

[30] 33 L.P.R.A. sec. 4637.

recluida o en restricción de libertad. (Énfasis suplido.)

El principio de favorabilidad establece que si una ley penal es aprobada con posterioridad a la comisión de unos hechos delictivos, y sus efectos resultan en un tratamiento más favorable para un acusado, ésta debe aplicarse de forma retroactiva, de modo que el acusado disfrute de sus beneficios. No obstante, hemos señalado que el principio de favorabilidad no tiene rango constitucional, por lo que la aplicación retroactiva de las leyes penales que favorezcan al acusado queda dentro de la prerrogativa total del legislador.[31] Siendo así, es permisible restringir su alcance mediante legislación.[32] Por eso, para poder aplicar retroactivamente un nuevo estatuto penal en beneficio de un ciudadano –principio de favorabilidad-, debemos en primer lugar determinar si el legislador no ha limitado tal alcance.[33]

## III

En el presente caso, luego del peticionario Hernández García presentar su petición de apelación ante esta Curia, entraron en vigor las enmiendas a la Ley Núm. 266, *supra*, introducidas por la Ley Núm. 243, *supra*. Entre los cambios introducidos por esta ley se encuentra

---

[31] Pueblo v. González, 165 D.P.R. 675 (2005).

[32] Íd.

[33] D. Nevares-Muñiz, Nuevo Código Penal de Puerto Rico, comentado, 5ta ed., San Juan, Inst. Desarrollo del Derecho, 2004-2005, pág. 10.

el que, al definir la palabra "convicto" en el marco de la Ley Núm. 266, el legislador aclaró que una persona que disfrute de libertad bajo palabra, condicionada, libertad a prueba o algún método de cumplimiento alterno de la pena de reclusión se considerará convicto. Por lo tanto, en el caso de autos el foro *a quo* tenía razón al interpretar que las personas que hacían alegación de culpabilidad y recibían el beneficio del programa de desvío de la Ley Núm. 177, *supra*, se consideran convictos.

Por otro lado y como vimos, la enmienda a la Ley Núm. 266, *supra*, también creó un sistema de clasificación que establece que una persona que ha infringido el Art. 75 de la Ley Núm. 177 se clasificará como un ofensor sexual tipo I **siempre y cuando incurre en conducta constitutiva de abuso sexual.** Al introducir esta enmienda el legislador no sólo define por primera vez la figura del ofensor sexual para efectos del Registro y establece gradaciones en torno esta, sino que aclara su alcance en el contexto de los artículos 75 y 76 de la Ley Núm. 177, *supra*, señalando que la convicción que requerirá inscripción es aquella **constitutiva de abuso sexual.** Tal limitación no existía en la Ley Núm. 266, *supra*, antes de esta enmienda, pues el estatuto no especificaba que la conducta que infringía el Art. 75 de la Ley Núm. 177, *supra*, tenía que ser constitutiva de abuso sexual.

Sin embargo, en cuanto al Art. 3 de la Ley Núm. 266-2004, según enmendado por la Ley Núm. 243-2011, enmienda que permite ahora la eliminación del Registro de aquellos ciudadanos cuyas causas hayan sido sobreseídas como consecuencia de haber cumplido con un programa de desvío, es claro que las circunstancias particulares del peticionario Hernández García no fueron comprendidas en el estatuto. Esto, pues "al momento" de la aprobación de la enmienda el peticionario no se encontraba participando del programa de desvío de la Ley Núm. 177, sino que lo había completado y se había sobreseído la causa criminal en su contra. En vista de lo anterior, y a pesar de la discreción otorgada a los tribunales por el legislador para aplicar la nueva enmienda en favor del ciudadano, este no incluyó las circunstancias particulares del aquí peticionario.

Una circunstancia parecida ocurre con la aplicación de la enmienda hecha al Art. 2(8)(iii) por la Ley Núm. 243-2011. Aunque el legislador dejó fuera de la definición de "convicto" para efectos de la Ley Núm. 266-2004 el delito por el cual el aquí peticionario hizo alegación de culpabilidad, nada dispuso con relación a aquellas personas que, como Hernández García, estuvieran inscritos como consecuencia de delitos que pudieran haberse entendido estaban comprendidos dentro de la ley, pero que ya sin duda no lo están.

Por otro lado, es un hecho que la inscripción de una persona en el Registro creado por la Ley Núm. 266-2004, *supra*, surge como consecuencia obligada de una convicción por alguno de los delitos que expresamente establece la ley, y como parte del acto de lectura de sentencia que se dicta en su contra.[34] Sin embargo, la Exposición de Motivos de la Ley Núm. 266-2004, según enmendada, **expresa claramente que el Registro no tiene un propósito punitivo.**[35] **Esto es, la intención del Estado al ordenar que como parte de su sentencia una persona convicta sea inscrita en el Registro, no constituye un castigo.** No empece lo anterior, es evidente que una persona cuyo nombre aparece inscrito en el referido Registro se perjudica al sufrir el descrédito que implica ser identificado pública y constantemente como un ofensor sexual o mal tratante de menores, y al padecer del estigma social que inevitablemente ello acarrea; ciertamente las consecuencias son muy negativas. Como señaló el Tribunal Supremo de los Estados Unidos en <u>Smith v. Doe</u>, 538 U.S. 84, 99 (2003): *"The publicity [of the sex offender registration] may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism"*. (<u>Smith v. Doe</u>, *supra*, es el caso en el que el Tribunal Supremo federal sostuvo la constitucionalidad a nivel federal de los registros de

---

[34] 4 L.P.R.A. Sec. 536b.

[35] Exposición de Motivos, Ley 266, *supra*.

ofensores sexuales("*Megan's Law*") ante el planteamiento de que eran violatorios de la Cláusula Ex Post Facto de la Constitución Federal).

Ahora bien, si el propósito del Registro no es uno punitivo, ¿a qué obedece entonces su implantación? Nuevamente, la Exposición de Motivos de la Ley Núm. 266-2004 según enmendada, *supra*, así como el primer artículo de la propia ley nos proveen la contestación a tal interrogante al señalarnos que el Registro "es un medio para garantizar la seguridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección en nuestra sociedad"[36]. Esto es, "[a]nte el peligro que representa que la persona convicta por delitos de esta naturaleza incurra nuevamente en esa conducta y ante el riesgo que puede representar y el daño que puede causar una persona con tendencia irreprimida de cometer delitos sexuales"[37], lo que se pretende "exclusivamente es proteger la seguridad y el bienestar de los sectores más vulnerables... de nuestra sociedad".[38]

De igual manera y de forma reiterada lo expuso la Asamblea Legislativas en la Exposición de Motivos de la Ley Núm. 243-2011, *supra*, al señalar lo siguiente:

> Resulta meritorio, además, aprovechar esta ocasión para reiterar que nuestro Registro, al igual que los Registros establecidos en todos los estados de los Estados Unidos, no tiene un

---

[36] Íd.

[37] 4 L.P.R.A. sec 531.

[38] Íd.

> propósito punitivo; es un medio por el cual el
> Estado puede velar por la seguridad,
> protección y bienestar general. Igualmente,
> enfatizamos que brindar mayor protección y
> seguridad a los menores de edad en cuanto a la
> explotación sexual y crímenes violentos se
> refiere; promover la seguridad de los jóvenes;
> atacar y prevenir el abuso infantil y la
> pornografía infantil, entre otros asuntos,
> reviste uno de alto interés público, que
> amerita la aprobación por parte de la Asamblea
> Legislativa de Puerto Rico de esta Ley.[39]

**Como corolario de todo lo anterior es forzoso concluir que la inscripción en el Registro creado por la Ley Núm. 266-2004, _supra_, constituye una medida de seguridad que, aunque no surge de una ley penal, es impuesta como consecuencia del incumplimiento de una ley penal por parte de un ciudadano, medida de seguridad que recae como parte de su sentencia.** Esto es, la persona que se encuentra inscrito en el Registro esta cumpliendo con parte de lo que es -por mandato de ley- su sentencia penal.

El hecho de que la Ley Núm. 266-2004, _supra_, sea identificada expresamente por el legislador como una ley no penal, no significa que sus disposiciones no puedan ser comprendidas por el principio de favorabilidad del Art. 9 del Código Penal, _supra_.[40] Después de todo, las llamadas "Megan's Law" son leyes auxiliares de leyes penales cuya aplicación -como en el caso de autos- se da

---

[39] Exposición de Motivos, Ley 243-2011, _supra_.

[40] Nótese, además, que la propia Ley Núm. 266-2004, _supra_, contiene penas para las personas que infrinjan sus disposiciones. Así, la referida ley tipifica tal conducta como delito menos grave y le impone una pena de hasta 6 meses de reclusión, o multa de hasta $5,000, o ambas penas, a discreción del Tribunal. Art. 11 de la Ley Núm. 266-2004, 4 L.P.R.A. sec. 536(h).

muchas veces como parte de un proceso penal. En ese
sentido, aunque la Ley Núm. 266-2004, *supra*, sea una ley
civil "no punitiva", según designada por el legislador,
ese hecho no es óbice para la aplicación del principio de
favorabilidad en aquellas instancias en que la denominada
ley "no punitiva" tiene en su aplicación efectos
notablemente perjudiciales en el individuo objeto de
ésta.

Por otro lado, es cierto que la medida de seguridad
que constituye la inscripción en el Registro de un
ofensor sexual es distinta a la contenida en el Art. 91
del Código Penal, 33 L.P.R.A. Sec. 4719, pues esta última
conlleva la reclusión de la persona en alguna institución
para tratamiento. No obstante, eso no implica el que
toda medida de seguridad requiere la reclusión de la
persona. Tanto el Art. 96 del propio Código Penal, 33
L.P.R.A. Sec. 4724, como la Regla 241(e) de las de
Procedimiento Criminal, 34 L.P.R.A. Ap. II, 241, facultan
al tribunal para permitir que una medida de seguridad se
complete en la libre comunidad, siempre y cuando exista
supervisión.[41]     Además, en Smith v. Doe*, supra*, el

---

[41] Los Artículos 94, 95 y 96 encuentran su razón de ser en el hecho de que —como señalamos en el cuerpo de la Opinión— el Art. 91 se refiere a una medida de seguridad que **conlleva reclusión, distinto a la diseñada por la Asamblea Legislativa mediante la creación del Registro de la Ley Núm. 266-2004.** Esto es, la persona, a pesar de haber sido —por razón de incapacidad mental o trastorno mental transitorio— encontrada no culpable, se enfrenta a la posibilidad real de ser recluida en una institución para recibir tratamiento. En ese contexto lo cierto es que ese ciudadano podría verse privado de su libertad hasta que ya no constituya una amenaza para la comunidad o para sí mismo. Claro está, y como señala también el Art. 92, el tiempo de esa reclusión nunca podrá ser superior a la pena aplicable al delito por el cual se le acusó.

Tribunal Supremo federal equiparó la acción de inscribir a un ofensor sexual en un registro público ("*Megan's Law*"), a una medida de seguridad ("*restrictive measure*").[42]

En el presente caso, año tras año la Policía de Puerto Rico le ha tomado fotos y huellas dactilares al señor Hernández García por el hecho de que este se encuentra inscrito en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores. Es claro entonces que las circunstancias son las descritas por el inciso (b) del Art. 9 del Código Penal, *supra*, *id est*, "durante el término en que" el peticionario Hernández García se encontraba sufriendo los efectos –justos o injustos– de lo que fuera el proceso de su alegación de culpabilidad, desvío y sobreseimiento de su causa, "entr[ó] en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarla".

¿Debe aplicarse esa enmienda que favorece al peticionario de manera retroactiva? Ciertamente, toda vez que este satisface los requerimientos del Art. 3(d)

---

A eso responden los requisitos que imponen los referidos artículos: a la necesidad de que, previo a la implantación y mientras el ciudadano este sometido a la restricción de su libertad, el proceso en todo momento le provea las garantías mínimas que aseguren la oportunidad de cuestionar si tal reclusión es realmente necesaria. Por eso la necesidad, previo a la implantación de la medida, de un informe siquiátrico o sicológico y un informe social (Art. 94); el derecho a que se celebre una vista para poder confrontar a los autores de dichos informes con sus conclusiones (Art. 95), y la necesidad de revisiones periódicas para evaluar si la reclusión que se impuso como medida de seguridad puede ser dejada sin efecto o modificada (Art. 96). **En vista de lo anterior, es claro que tales artículos no son de aplicación en el caso de la medida de seguridad que constituye la inscripción en el Registro que establece la Ley Núm. 266-2004.**

[42] Smith v. Doe, 538 U.S. 84, 93 (2003).

de la Ley Núm. 266. **Toda enmienda producida por la Ley Núm. 243 a la Ley Núm. 266, conocida como Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores que resulte en un beneficio para aquellas personas que están sufriendo los efectos de la Ley Núm. 266, *supra,* deberá aplicarse retroactivamente, de acuerdo con el Art. 9 (b) del Código Penal, *supra*. Claro está, siempre y cuando la persona cumpla con las condiciones contempladas en la Ley Núm. 266, según enmendada, *supra.***

De esta manera, interpretamos que la discreción otorgada por el legislador en la aplicación de estas enmiendas –Art. 15 de la Ley Núm. 243, *supra*- no aplica a aquellas que puedan beneficiar a un ciudadano cuyo nombre se encuentra inscrito en este Registro. Esto, en vista de que el legislador no limitó expresamente la retroactividad del beneficio. Al contrario, la intención legislativa de la Ley Núm. 243, *supra*, con relación este tipo de enmienda en beneficio del ciudadano, fue aclarar la Ley Núm. 266, *supra*, y hacer retroactivos sus efectos. Así surge, no solo del texto de la Exposición de Motivos -refiriéndose al nuevo Art. 3 de la Ley Núm. 266[43]- sino del texto mismo del Art. 3 según fuera enmendado, el cual

---

[43] La exposición de Motivos de la Ley Núm. 243, *supra*, señala lo siguiente:

> Igualmente, **se aclara** que estarán obligados a registrarse las personas que participen en programas de desvío, tratamiento o rehabilitación de la Administración de Corrección. **Disponiéndose que una vez cumplidas las condiciones y archivado el caso por el Tribunal, la inscripción será eliminada del Registro.** (Énfasis suplido)

en su inciso (d) retrotrae el alcance de este artículo a **"[l]as personas que al momento de la aprobación de esta Ley** se encuentren... participando de algún programa de desvío, tratamiento o rehabilitación... **Disponiéndose que en estos casos**, una vez el acusado cumpla con las condiciones... [y se] ordene el sobreseimiento de la acción criminal... el Sistema eliminará la inscripción del acusado en el Registro aquí establecido". El hecho de que tal retroactividad no alcanzara las circunstancias del aquí peticionario, precisa entonces la aplicación, como hemos hecho, del principio de favorabilidad.

En el caso de autos, a pesar de que el señor Hernández García cumplió con el programa de desvío dispuesto en el Art. 80 de la Ley Núm. 177, *supra*, y el Tribunal de Primera Instancia ordenó el sobreseimiento de la causa penal, su nombre fue inscrito en el Registro por tratarse de un delito contra la protección a los menores. Aunque esta última realidad jurídica fue cambiada mediante las enmiendas introducidas a la Ley Núm. 266, *supra*, por la Ley Núm. 243, *supra*, persiste una resolución del Tribunal de Primera Instancia en perjuicio del peticionario. Así las cosas, al comparar los artículos pertinentes de la Ley Núm. 266, *supra*, vigentes al momento de la resolución del Tribunal de Primera Instancia y las enmiendas producidas por Ley Núm. 243, *supra*, es evidente que la nueva ley es más favorable para

el señor Hernández García.  Por lo tanto, debemos aplicar el principio de favorabilidad.

Al peticionario se le imputó infringir el Art. 75 de la Ley Núm. 177, *supra*, y pudo optar al desvío del Art. 80 de dicha ley precisamente porque la conducta imputada no implicó abuso sexual.  Por lo tanto, el delito por el cual hizo alegación de culpabilidad ya no requiere la inscripción en el Registro.  Además, el peticionario cumplió con su programa de desvío y su causa fue sobreseída, por lo que, en vista de la reciente enmienda al Art. 3 de la Ley Núm. 243, *supra*, su nombre hubiera tenido que ser eliminado del Registro de todos modos.  Ante esta situación, no existe base legal para que el señor Hernández García permanezca en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores de la Ley Núm. 266, *supra,* según enmendada.

**IV**

Por los fundamentos antes expuestos, acogemos el escrito presentado como una petición de *certiorari,* expedimos el auto y revocamos la sentencia del Tribunal de Apelaciones.  Ordenamos que se elimine al señor Hernández García del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                    AC-2011-135

Jeffrey Hernández García

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 17 de septiembre de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, acogemos el escrito presentado como una petición de *certiorari,* expedimos el auto y revocamos la sentencia del Tribunal de Apelaciones. Ordenamos que se elimine al Sr. Jeffrey Hernández García del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton hace constar la siguiente expresión:

El Juez Presidente señor Hernández Denton concurre con el resultado de la Opinión mayoritaria, por entender que el principio de favorabilidad del Art. 9 del Código Penal, 33 L.P.R.A. sec. 4637, no es aplicable a los hechos de este recurso. El Art. 1 de la Ley que creó el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, Ley Núm. 266-2004, 4 L.P.R.A. sec. 536 *et seq.,* dispone claramente que este estatuto "no tiene un propósito punitivo", lo cual excluye la aplicación

del principio de favorabilidad. Además, en lo pertinente al caso ante nos, la Ley 243-2011 enmendó el Art. 3(d) de la Ley Núm. 266-2004, *supra*, para establecer que el nombre del ciudadano se eliminará del Registro una vez este cumpla con un programa de desvío y el tribunal ordene el sobreseimiento de la acción criminal. Según el Art. 15 de la Ley 243-2011, las disposiciones de esa ley podrán tener efecto retroactivo. Consiguientemente, hubiera dejado sin efecto los dictámenes de los foros inferiores mediante la interpretación de la Ley Núm. 266-2004, según enmendada, *supra*, sin hacer referencia al Código Penal.

La Juez Asociada señora Rodríguez Rodríguez hace constar la siguiente expresión:

La Juez Asociada señora Rodríguez Rodríguez concurre con la Opinión del Tribunal por entender que la Ley Núm. 243 de 14 de diciembre de 2011, Ley para enmendar la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso de Menores y otros fines, excluyó de este registro a aquellas personas que incurrieron en el delito de maltrato de menores tipificado en los Arts. 75 y 76 de la Ley Núm. 177 de 2003 cuando el maltrato no constituyó abuso sexual. Cónsono con las enmiendas procede excluir al peticionario de dicho Registro toda vez que los hechos por los cuales hizo alegación de culpabilidad no constituyeron abuso sexual.

Asimismo, la Juez Asociada señora Rodríguez Rodríguez considera que el principio de favorabilidad contemplado en el Art. 9 del Código Penal no aplica en este caso. El Registro de Personas Convictas por Delitos Sexuales y Abuso de Menores tiene como fin garantizar la seguridad, protección y bienestar general de los menores, no imponer una pena. En este sentido, el legislador puede otorgarle discreción a los tribunales para excluir o mantener a una persona convicta de abuso sexual en el mencionado Registro.

El Juez Presidente señor Hernández Denton se une a las expresiones de la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Martínez Torres emitió Opinión Concurrente a la cual se une la Jueza Asociada señora Pabón Charneco.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Recurrido

        v.

                        AC-2011-135

Jeffrey Hernández García

      Peticionario

Opinión Concurrente emitida por el Juez Asociado señor MARTÍNEZ TORRES a la que se une la Jueza Asociada señora PABÓN CHARNECO

En San Juan, Puerto Rico, a 17 de septiembre de 2012.

Concurro con la decisión del Tribunal de que, en este caso, procede aplicar retroactivamente el Art. 2 de la Ley Núm. 243-2011, que enmendó el Art. 3 de la Ley Núm. 266-2004, 4 L.P.R.A. sec. 536a. Sin embargo, opino que es innecesario fundamentar nuestra decisión en el Art. 9 del Código Penal de 2004, 33 L.P.R.A. sec. 4637. Al concluir de esa forma, la Opinión del Tribunal colisiona con el texto cristalino del Art. 1 de la Ley Núm. 266, _supra_, según enmendado, 4 L.P.R.A. sec. 536.

Los hechos del caso que nos ocupa se encuentran expuestos correctamente en la Opinión

del Tribunal por lo que no es necesario repetirlos aquí.

I

Como muy bien señala la Opinión mayoritaria, el Tribunal de Apelaciones, al interpretar la Ley Núm. 266, supra, antes de que fuera enmendada por la Ley Núm. 243, supra, "tenía razón al interpretar que las personas que hacían alegación de culpabilidad y recibían el beneficio del programa de desvío de la Ley Núm. 177[-2003], se consideran convictos". Opinión del Tribunal, págs. 17-18. Eso implica que tenían que estar inscritos en el Registro de Ofensores Sexuales. Ahora bien, con la nueva ley claramente las personas que "se encuentren recluidas o participando de algún programa de desvío, tratamiento o rehabilitación de la Administración de Corrección" o que posteriormente "sean sometidos a dichos programas" serán removidas del Registro de Ofensores Sexuales tan pronto "el acusado cumpla con las condiciones impuestas por el Tribunal, y éste ordene el sobreseimiento de la acción criminal". Art. 2 de la Ley Núm. 243, supra. Adviértase que la Asamblea Legislativa no extendió expresamente lo dispuesto en el Art. 2, íd., a las personas que ya habían terminado el programa de desvío cuando entró en vigor la ley nueva, como ocurre en este caso.

Para concluir que lo dispuesto en el Art. 2, íd., aplica a las personas que terminaron el programa de desvío cuando entró en vigor la ley nueva **lo único** que hay que hacer es recurrir al Art. 15 de la Ley Núm. 243, supra.

Ese artículo establece que: "[e]sta Ley comenzará a regir inmediatamente después de su aprobación. Los incisos (f) y (g) del Artículo 4 tendrán efecto prospectivo. **Las demás disposiciones podrán tener efecto retroactivo**". (Énfasis nuestro.) Un análisis del artículo transcrito revela que la Asamblea Legislativa otorgó a la Rama Judicial la discreción de decidir si las disposiciones de la ley tienen carácter retroactivo. Hemos indicado que la discreción se nutre "de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 770 (1977), reiterado en HIETel v. PRTC, 182 D.P.R. 451, 459 (2011). Asimismo, "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 658, (1997). (Cita omitida.) Así pues, amparándonos en la discreción que nos confirió el legislador, es correcta la conclusión de la Opinión del Tribunal. No hay razón para tratar distinto al peticionario por el mero hecho de que completó el programa de desvío. Disponer lo contrario sería un abuso de discreción.

No obstante, la Opinión del Tribunal recurre al Art. 9 del Código Penal de 2004, supra, que recoge el principio de favorabilidad. En lo concerniente, el Art. 9(b) del Código Penal, íd., indica: "Si durante el término en que

la persona está **cumpliendo la sentencia** entra en vigor una ley más benigna **en cuanto a la pena** o **a la medida de seguridad** o **al modo de ejecutarlas**, se aplicará retroactivamente". (Énfasis nuestro.) No obstante, la inclusión de una persona en el Registro de Personas Convictas por Delitos Sexuales y Abuso de Menores **no es una pena ni una medida de seguridad**. Ni siquiera **se cumple una sentencia** en este caso, pues el peticionario terminó el programa de desvío.

El Art. 1 de la Ley Núm. 266, supra, indica que "[e]l Registro que se crea mediante esta Ley **no tiene un propósito punitivo**; es un medio para garantizar la seguridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección de nuestra sociedad". (Énfasis nuestro.) Incluso, en la Exposición de Motivos de la Ley Núm. 243, supra, el Legislador reitera que "nuestro Registro, al igual que los Registros establecidos en todos los estados de los Estados Unidos, **no tiene un propósito punitivo**; es un medio por el cual el Estado puede velar por la seguridad, protección y bienestar general". Exposición de Motivos, Ley Núm. 243, supra, pág. 2. (Énfasis nuestro.) Si bien la ley hace referencia constantemente al término "convicto", eso no es óbice para concluir que esa ley es penal. Para un análisis de derecho comparado con otras jurisdicciones en que existen leyes que establecen registros similares, véase, J. Ramírez Vélez, El Registro de Personas Convictas por

delitos y abuso contra menores: ¿Seguridad o Castigo?, 42 Rev. Jur. U.I.P.R. 337 (2008).

Por su parte, tampoco es correcto afirmar que la Ley Núm. 266, supra, constituye una **medida de seguridad**. Como bien indica la Opinión del Tribunal, pág. 23, el Art. 91 del Código Penal, 33 L.P.R.A. sec. 4719, **no establece** que la inscripción en el Registro de Personas Convictas por Delitos Sexuales y Abuso de Menores sea una medida de seguridad. Tampoco es esa la intención legislativa.

El citado Art. 91 del Código Penal, supra, permite que el tribunal conserve jurisdicción sobre una persona que resulte no culpable por razón de incapacidad mental o trastorno mental transitorio, y la interne en una institución adecuada para su tratamiento.[44] Por su parte, el Art. 94 del Código Penal de 2004, 33 L.P.R.A. sec. 4722, establece que no "podrá imponerse medida de seguridad sin previo examen e informe siquiátrico o sicológico de la persona, realizado por un siquiatra o sicólogo clínico designado por el tribunal y un informe social realizado por un oficial probatorio".

De igual forma, el Art. 96 del Código Penal de 2004, 33 L.P.R.A. sec. 4724, impone un deber al tribunal de

---

[44] Con la aprobación del nuevo Código Penal de 2012, Ley Núm. 146-2012, la regulación de las medidas de seguridad sufrió cambios sustantivos. El nuevo Art. 81 del Código Penal de 2012, equivalente al Art. 91 del Código de 2004, supra, no hace alusión al trastorno penal transitorio como razón para declarar a una persona no culpable. Por su parte, el Art. 92 del Código Penal de 2004, 33 L.P.R.A. sec. 4720, fue suprimido del Nuevo Código Penal, por lo que ahora la medida de seguridad no tiene que ser proporcional a la pena del hecho cometido. Finalmente, el nuevo Art. 85 del Código Penal de 2012 le otorga discreción al tribunal a la hora de determinar si la medida de seguridad debe cesar.

pronunciarse sobre el mantenimiento, la modificación o la cesación de la medida de seguridad impuesta.

Una lectura integrada de los artículos citados revela que la medida de seguridad a la que hace referencia constantemente el Código Penal, es la medida de internación por incapacidad mental, trastorno mental transitorio o inimputabilidad. Véanse, por ejemplo, Arts. 2, 3, 4 y 5 del Código Penal de 2004, 33 L.P.R.A. secs. 4630-4633. A una conclusión idéntica arriban los expertos en la materia. J.P. Mañalich R., El Concepto de delito bajo el Código Penal de Puerto Rico, 79 Rev. U.P.R. 1115, 1126-1127 (2010); D. Nevarez Muñiz, Código Penal de Puerto Rico, 5ta ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2012, págs. 129-130. Por ello, no cabe hablar de la inscripción en el registro como una medida de seguridad. Aquí no se requiere evaluación síquica o sicológica del obligado a registrarse.

Recurrir en este caso al Art. 9 del Código Penal, supra, tendrá como consecuencia la proliferación de litigios injustificados. Por ejemplo, si determinamos que la inscripción de una persona en el registro es una medida de seguridad: **¿Será necesaria la preparación de un informe pre-sentencia conforme al Art. 94 del Código Penal, supra, que discuta la conveniencia de la inscripción en el registro?** Por otro lado, **¿tendrá el Tribunal que revisar anualmente el mantenimiento, la modificación o la cesación de la medida de seguridad impuesta, a saber, la**

**inscripción en el registro, según requiere el Art. 96 del Código Penal del 2004, _supra_? ¿No tropieza la decisión que hoy se emite con la obligación que impone al tribunal el Art. 4 de la ley Núm. 266, _supra_, de ordenar al Ministerio Público la inscripción en el registro de ofensores?**

El Art. 92 del Código Penal de 2004, 33 L.P.R.A. sec. 4720, establecía que debe existir proporcionalidad entre la medida de seguridad y la pena del hecho cometido. Con la Opinión de la mayoría en este caso: **¿Debe existir proporción entre el tiempo en que una persona está inscrita en el Registro y la pena del delito cometido? ¿No sería eso contrario a la Ley Núm. 266, _supra_, según enmendada?** Todas esas interrogantes quedan en suspenso con la Opinión que emite este Foro.

El Tribunal intenta despachar estas preguntas en una nota al calce en la que expresa su impresión de que los Art. 92 al 96 del Código Penal, _supra_, no aplican. Si el Tribunal reconoce eso, ¿de dónde surge entonces, que la inscripción en el Registro de Personas Convictas de Delitos Sexuales y Abuso contra Menores es una medida de seguridad? Parece que surge del mismo sitio que la aplicación del Art. 9 del Código Penal, _supra_: De la preferencia personal de una mayoría de los Jueces de este Tribunal y no de la voluntad legislativa.

II

Por los fundamentos antes expuestos, acogería el escrito presentado como una petición de certiorari, expediría el auto y revocaría la decisión del Tribunal de Apelaciones. La Asamblea Legislativa nos concedió discreción para aplicar de forma retroactiva el Art. 2 de la Ley Núm. 243, supra. En el ejercicio de esa discreción, procede eliminar al señor Hernández García del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores. Para arribar a ese resultado no es necesario recurrir al principio de favorabilidad incluido en el Art. 9 del Código Penal, supra.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado