ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **PROSOL-UTIER**<br><br>Apelante<br><br>v.<br><br>**INSTITUTO DE CULTURA PUERTORRIQUEÑA y otros**<br><br>Apelado | TA2025AP00421 | **APELACIÓN acogida como _Certiorari_** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2024CV11508**<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de diciembre de 2025.

Comparece el Programa Solidaridad UTIER (PROSOL-UTIER o parte peticionaria) y solicita que revisemos la _Sentencia_ notificada por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan, el 5 de septiembre de 2025.[1] Mediante la misma, el TPI declaró _No Ha Lugar_ la impugnación de laudo de arbitraje incoada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de _certiorari._ Veamos.

## I.

Según surge del expediente, en febrero de 2023, el Instituto de Cultura Puertorriqueña (ICP) notificó a 25 empleados la reclasificación de sus puestos, conforme la Carta Normativa Núm.

---

[1] Acogemos el recurso de epígrafe como un _certiorari_, en virtud de lo dispuesto en la Regla 32(C) del Reglamento del Tribunal de Apelaciones, según enmendada, _In re Aprob. Enmdas. Reglamento TA_, 2025 TSPR 42, págs. 49-50, 215 DPR __ (2025). Véase, también _Hosp. del Maestro v. U.N.T.S._, 151 DPR 934 (2000). Se mantendrá el mismo alfanumérico asignado por la Secretaría de este Tribunal de Apelaciones por cuestiones de economía procesal.

1-2023. En desacuerdo con dicha determinación, PROSOL-UTIER, Capítulo ICP, en representación de los empleados afectados, instó ante la Comisión Apelativa del Servicio Público (CASP) sendas solicitudes de arbitraje de quejas y agravios.

Mediante *Resolución* emitida el 18 de septiembre de 2024, la árbitro Jeovany Vázquez Ocasio pautó una conferencia con antelación a la vista para el 30 de octubre de 2024 a la 1:00 pm, en la cual las partes discutirían y presentarían, lo siguiente:

**Discutir:**

1. Si se han hecho acuerdos que ponga[n] fin a la controversia.
2. Si la controversia o parte de ella se tomó académica.
3. Lista de testigos a utilizar durante la sesión arbitral.
4. Determinar específicamente si la controversia es sobre las funciones que realiza la persona o un asunto salarial.
5. Establecer y evidenciar si el Comité Revisor recomendó una reasignación de escala retributiva superior a la asignada.
6. Interés en someter la controversia mediante estipulaciones de hechos y memorandos de derecho.

**Presentar:**

1. Notificación de clasificación e informe de cambio.
2. Solicitud de revisión ante el Comité Revisor de la determinación de clasificación de la Agencia.
3. Determinación de la Autoridad Nominadora de la Agencia.

   a. Notificación de Determinación de la Autoridad Nominadora de la Agencia a la OATRH en los casos que envuelven reasignaciones de escalas.
   b. Determinación de la OATRH.
   c. Notificación de la Determinación de OATRH al empleado.

En la aludida determinación se notificó a las partes que debían presentarse a la conferencia debidamente preparadas y se les apercibió que, de no comparecer, el día de la vista se dispondría del caso con la información y evidencia que obrara en el expediente. Además, Vázquez Ocasio aclaró que el epígrafe no constituía una

consolidación de los casos y que solo era para propósitos de la conferencia con antelación a la vista, por lo que, en el caso de alguna de las partes presentar una moción debía señalar, individualmente, el número de caso al que hacía referencia.

El 11 de octubre de 2024, el licenciado Francisco Santiago, abogado de PROSOL-UTIER, solicitó la transferencia de la vista mediante una moción a la que hizo referencia al caso AQ-23-1566. Basó su petitorio en que poseía un señalamiento previo en la CASP en otro caso. La CASP no emitió determinación alguna sobre la solicitud de transferencia.

El día de la conferencia con antelación a la vista, la licenciada Rosalba Heredia Lafontaine, también representante legal de PROSOL-UTIER, solicitó nuevamente la transferencia por conflictos en el calendario y por razón de vacaciones.

Así las cosas, el 14 de noviembre de 2024, Vázquez Ocasio dictó una *Resolución de Cierre*, por medio de la cual estableció que no existía causa para la incomparecencia de las partes a la vista pautada para el 30 de octubre de 2024.[2] Añadió que la moción en solicitud de transferencia de vista incoada por los abogados de PROSOL-UTIER no fue acogida por la CASP y que la moción instada el mismo día de la conferencia fue inoportuna.

Por lo anterior, la árbitro, al palio del Artículo VII, Sección 710 (B) del Reglamento de la CASP, decretó el archivo y cierre del caso, con perjuicio ante el foro de arbitraje. Sostuvo que dicho precepto legal le concedía potestad para: (1) proceder al cierre del caso con perjuicio; (2) efectuar la vista y emitir un laudo solo a base de prueba presentada y (3) tomar la acción que estime apropiada consistente con la más rápida y efectiva disposición de la controversia, si una de las partes, o ambas, no comparecen a la vista luego de haber sido

---

[2] La árbitro dispuso que realizó la consolidación de los 25 casos para efectos únicos de la *Resolución de Cierre*.

notificadas. Ello, sin haber solicitado y conseguido aplazamiento o suspensión de la vista.

En desacuerdo, el 16 de diciembre de 2024, PROSOL-UTIER instó una *Impugnación de Laudo de Arbitraje Obrero/Patronal por Violación al Debido Proceso de Ley* ante el Tribunal de Primera Instancia. En su escrito, alegó que la *Resolución de Cierre* constituyó un laudo debido a que el *Reglamento Procesal de la Comisión de Relaciones del Trabajo del Servicio Público*, Reglamento Núm. 6385 (en adelante, "Reglamento Núm. 6385") no establece procedimiento a seguir sobre aquellas resoluciones de cierre tomadas previo a una vista en sus méritos, de modo que esta se tornó final.

Al mismo tiempo, PROSOL-UTIER adujo que la árbitro erró al desestimar con perjuicio los 25 casos de los querellantes, contrario a los parámetros establecidos por el Reglamento Núm. 6385 y violentándole el debido proceso de ley, así como la política pública del Gobierno de Puerto Rico. Añadió que la árbitro se equivocó al desestimar con perjuicio los casos porque dicha determinación no resolvió todas las controversias presentes al momento del cierre. Precisó, a su vez, que el procedimiento efectuado no fue claro e indujo a error a los querellantes.[3]

Llegado a este punto, el 5 de septiembre de 2025, el foro primario dictó el pronunciamiento bajo nuestra consideración. Mediante este, concluyó que la árbitro actuó conforme a derecho al decretar el cierre del arbitraje por ausencia de las partes a la conferencia con antelación a la vista en su fondo. En el dictamen, el TPI expresó que:

> [L]a parte peticionaria no podía descansar solamente en la solicitud del aplazamiento o suspensión de la vista pautada para el 30 de octubre de 2024, sino que debía conseguirla, es decir, tener confirmación sobre que, en efecto, se accedió a su solicitud. Así, no existe controversia en torno a que la árbitro tenía la autoridad

---

[3] El ICP no presentó oposición.

de cerrar el caso con perjuicio conforme la Sección 710 (B)(1) del Reglamento Núm. 6385.

Cónsono con lo anterior, el foro *a quo* rechazó el argumento de PROSOL-UTIER en cuanto a que la CASP creó confusión al presuntamente consolidar y desconsolidar los casos desestimados ante sí. Por el contrario, estableció que el lenguaje de la *Resolución* del 19 de septiembre de 2024 fue libre de ambigüedades al incluir el apercibimiento sobre que cualquier moción o documento debía señalar, individualmente, el número de caso al que hacía referencia.

Al concederle deferencia a la decisión impugnada, el TPI declaró *No Ha Lugar* la petición de revisión y concluyó que la *Resolución de Cierre* no violó el debido proceso de ley ni la política pública.

En desacuerdo, PROSOL-UTIER incoó el recurso que nos ocupa. En este le señaló al TPI la comisión de los siguientes errores:

> Erró el Honorable TPI al determinar que el laudo emitido no violentó el debido proceso de ley de las y los querellantes al Árbitro excederse en sus facultades y proceder, arbitrariamente, con el cierre de veinticinco casos aún cuando se solicitó transferencia de vista dentro de los términos establecidos.

> Erró el Honorable TPI al determinar que el laudo emitido no violento la política pública del Gobierno de Puerto Rico al ordenar el cierre de veinticinco casos sin que se le proveyese oportunidad a las y los trabajadores querellantes tener su día de vista.

> Erró el Honorable TPI al determinar que el laudo resuelve todas las controversias planteadas y no adolece de falta de claridad, al mismo no adentrarse a resolver cuestionamientos de derecho previamente sometidos entre las partes y ser objeto de múltiples irregularidades en el transcurso del manejo del mismo.

El 14 de noviembre de 2025, el ICP presentó una *Moción de Desestimación,* bajo el fundamento de que la decisión emitida por la CASP no constituyó un laudo arbitral susceptible de revisión al amparo del mecanismo de impugnación de laudos. Su contención se circunscribe a que la determinación en cuestión debió ser impugnada mediante un recurso de revisión judicial. Entiende que

el recurso presentado por PROSOL-UTIER ante el TPI fue inoficioso al haber sido incoado en un foro carente de jurisdicción, por lo que no interrumpió, ni suspendió el término para presentar el recurso correcto ante este Honorable Tribunal de Apelaciones.

PROSOL-UTIER se opuso al petitorio del ICP. En esencia, esboza que la resolución de la CASP cuenta con todas las características de un laudo arbitral y no una determinación administrativa. Puntualiza que, en nuestro ordenamiento jurídico, el arbitraje obrero patronal aun no cuenta con un estatuto que regule dicho campo de revisión. Añade que el Tribunal Supremo de Puerto Rico ha expresado que, del convenio colectivo no establecer término dentro del cual las partes deben recurrir ante el foro judicial, a los fines de impugnar el laudo emitido, las partes tendrán treinta (30) días para así hacerlo ante el TPI. Sostiene que no procede la desestimación del recurso de referencia.

## II.

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019).[4]

---

[4] El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra.*

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *supra,* págs. 59-60.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una

dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

### III.

En la presente causa, la parte peticionaria alega que el TPI erró al concederle deferencia a la *Resolución de Cierre* emitida por la árbitro. Al respecto, aduce que el tracto procesal del caso refleja un manejo irregular, lo cual indujo a error a la parte peticionaria al solicitar oportunamente la transferencia de la conferencia con antelación a la vista. Entiende que se le quebrantó el debido proceso de ley a todos los querellantes al no notificar adecuadamente el rechazo de la solicitud de transferencia, pues la árbitro nunca la atendió. Añade que ello no justifica impedir a toda una matrícula querellante la oportunidad para probar su caso en el foro de arbitraje establecido por el Convenio Colectivo. Esboza que la árbitro tomó una decisión contraria a la política pública que rige nuestro sistema y que favorece injustamente al patrono, aun cuando este tampoco compareció a la conferencia.[5]

Según expuesto, el Tribunal de Primera Instancia, al examinar la evidencia que se le presentó para su consideración, resolvió que la árbitro Vázquez Ocasio actuó dentro de su autoridad al ordenar

---

[5] Recordemos que la flexibilidad que caracteriza el proceso de arbitraje se logra porque las reglas de procedimiento civil no le aplican. *Hietel v. PRTC*, 182 DPR 451, 457 (2011), citando a D. Fernández Quiñones, *El Arbitraje Obrero-Patronal*, Colombia, Ed. Forum, 2000, pág. 24. El propósito de esto es respetar uno de los principios básicos del arbitraje, que es la finalidad en las dilucidaciones de controversias por medio de un procedimiento más ágil y menos formal. Véase, en general, F. Elkouri y E. Elkouri, *How Arbitration Works*, 5ta ed., Washington D.C., The Bureau of National Affairs, 1997, págs. 10–15.

el cierre con perjuicio de las querellas, tras la incomparecencia de las partes a la conferencia con antelación a la vista. En consecuencia, confirmó la *Resolución de Cierre* impugnada.

Analizada la determinación recurrida, colegimos que no concurre ninguno de los criterios que mueva nuestra discreción para expedir el auto solicitado por la parte peticionaria. Lo anterior, por no encontrar indicio alguno de que el TPI actuó de forma arbitraria, caprichosa, en abuso de su discreción o que haya cometido algún error de derecho. Es claro que la árbitro ostenta discreción para decretar el archivo de una querella, al palio de las disposiciones reglamentarias aplicables. Además, las partes fueron expresamente apercibidas sobre las consecuencias de no comparecer a la vista y no solicitar y conseguir aplazamiento o suspensión. El archivo del caso era una de ellas. En consecuencia, concluimos que no se le violentó el debido proceso de ley a la parte peticionaria.

**IV.**

Por los fundamentos expuestos, denegamos la expedición del auto de *certiorari*. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Se declara *No Ha Lugar* la solicitud de desestimación incoada por el ICP.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones